23 P.3d 1128 (2001)
John KUNKEL and Robyn Kunkel, husband and wife, Respondents,
v.
Thomas J. FISHER, Appellant.
No. 45374-2-I.
Court of Appeals of Washington, Division 1.
June 4, 2001.
*1129 Randy Marc Boyer, Edmonds, for Appellant.
Victor Evald Haglund, Everett, for Respondents.
GROSSE, J.
In a claim for a prescriptive easement, the use of another's property is presumed to be permissive. The trial court erred when it failed to apply this presumption to the Kunkels' claim of a prescriptive easement over the Fisher property. Because the Kunkels did not put forth sufficient evidence to overcome the presumption, we reverse.

FACTS
The Kunkels operated a house-moving business and kept trucks at their home in Lynnwood, Washington. By at least 1977, John Kunkel began parking trucks at the back of his property. The access to the back of his property was across adjacent property belonging to Thomas Fisher and his predecessors in interest.
*1130 In order to park his trucks at the back of his property, John Kunkel traversed the adjacent property on a daily basis. Since 1977, the adjacent property has had several different owners, none of whom objected to or interfered with the Kunkels' use. Fisher purchased the adjacent property in 1997 and attempted to formalize an agreement regarding the Kunkels' access. In response, the Kunkels brought this action seeking a prescriptive easement. The trial court found in the Kunkels' favor and this appeal followed.

DISCUSSION
The requirements to establish a prescriptive easement are the same as those to establish adverse possession.[1] The claimant must prove use of the servient land that is: (1) open and notorious; (2) over a uniform route; (3) continuous and uninterrupted for 10 years; (4) adverse to the owner of the land sought to be subjected; and (5) with the knowledge of such owner at a time when he was able in law to assert and enforce his rights.[2] Washington employs an objective test for adversity. When the claimant uses the property as the true owner would, under a claim of right, disregarding the claims of others, and asking no permission for such use, the use is adverse.[3] Adversity may be inferred from the actions of the claimant and the owner.[4]
Under the doctrines of both prescriptive easement and adverse possession, a use is not adverse if it is permissive.[5] Permission can be express or implied.[6] A permissive use may be implied in "`any situation where it is reasonable to infer that the use was permitted by neighborly sufferance or acquiescence[.]'"[7]
Although adverse possession and easements by prescription are often treated as equivalent doctrines, they have different histories and arise for different reasons.[8] Adverse possession promotes the maximum use of the land, encourages the rejection of stale claims to land and, most importantly, quiets title in land.[9] Easements by prescription do not necessarily further those same goals. Their principal purpose is to protect *1131 long-established positions.[10] Easements by prescription are disfavored in the law because they effect a loss or forfeiture of the rights of the owner.[11] On the other hand, adverse possession is not disfavored.[12] The differences in the historical origins and rationales behind prescriptive easement and adverse possession have resulted in a single but important difference in how they are applied.
In a claim for a prescriptive easement there is a presumption that the servient property was used with the permission of, and in subordination to, the title of the true owner.[13] If the use is initially permissive, it may ripen into a prescriptive easement only if the user makes a distinct, positive assertion of a right adverse to the property owner.[14]
Here the trial court erred when it failed to apply the presumption that the Kunkels' use was permissive. In its findings of fact, the court stated that the Kunkels began using the easement under a claim of right, adverse to the owners of the servient property; that the Kunkels' use fulfilled the prescriptive easement requirements; and that the Kunkels had a prescriptive easement. These are conclusions of law[15] and we review them as such.[16] When we consider the factual evidence even in the light most favorable to the Kunkels, it is insufficient to overcome the presumption of permission and insufficient to support the conclusions of law.
The lot that is now the Fisher property is large. Throughout the relevant time period it contained a house on one portion. The area that the Kunkels traversed was a half asphalt/half gravel parking area. There is no dispute that the successive owners were aware of the Kunkels' use and it is undisputed that no one ever objected to the Kunkels' use. While the owners were aware of the Kunkels' use, they rarely observed John Kunkel traversing the property either because they did not reside on the property, or because John would depart before they arrived and return after they had left. John Kunkel did not himself maintain the passage he traversed except on one occasion when he observed a tenant on the property bringing in some gravel and he helped him spread it.
One of the previous owners of the property operated an insurance business on it. He testified that he and John Kunkel discussed the Kunkels' use numerous times. John Kunkel would ask him if his use was a problem and he would answer that it was not. There is also evidence that on one occasion John Kunkel had to ask someone to move a vehicle so he could pass. Kunkel himself stated that his neighbors were very accommodating to him about the use.
This evidence is not sufficient to overcome the presumption that the use was permissive. Indeed, the only reasonable inference from the evidence is that the Kunkels' use was permissive. Nor is there any evidence that the Kunkels at any time made a distinct positive assertion of a right adverse to any of the property owners prior to this action. Thus, the evidence is also insufficient to support a conclusion that the Kunkels' permissive use ripened into an adverse use.
*1132 Taken in the light most favorable to the Kunkels, the evidence is insufficient to overcome the presumption in favor of a permissive use. We reverse.
NOTES
[1] 17 William B. Stoebuck, Washington Practice: Real Estate § 2.7, at 98 (1995); 25 Am.Jur.2d Easements and Licenses § 57, at 624 (1996).
[2] See The Mountaineers v. Wymer, 56 Wn.2d 721, 722, 355 P.2d 341 (1960) (citing Northwest Cities Gas Co. v. Western Fuel Co., 13 Wash.2d 75, 123 P.2d 771 (1942)). Many cases conflate various elements as different sub-components of the same element. See Lingvall v. Bartmess, 97 Wash.App. 245, 253, 982 P.2d 690 (1999) (listing four elements); ITT Rayonier, Inc. v. Bell, 112 Wash.2d 754, 757, 774 P.2d 6 (1989) (citing Chaplin v. Sanders, 100 Wash.2d 853, 857, 676 P.2d 431 (1984)). Some cases substitute the word "hostile" for "adverse." The requirements of hostility (i.e.adversity) and claim of right are one and the same. See Chaplin, 100 Wash.2d at 858, 676 P.2d 431.
[3] See Chaplin, 100 Wash.2d at 860-62, 676 P.2d 431; Dunbar v. Heinrich, 95 Wash.2d 20, 27, 622 P.2d 812 (1980); Malnati v. Ramstead, 50 Wash.2d 105, 108, 309 P.2d 754 (1957).
[4] See Chaplin, 100 Wash.2d at 862, 676 P.2d 431; Gray v. McDonald, 46 Wash.2d 574, 283 P.2d 135 (1955).
[5] Miller v. Anderson, 91 Wash.App. 822, 828, 964 P.2d 365 (1998); Cuillier v. Coffin, 57 Wash.2d 624, 626-27, 358 P.2d 958 (1961).
[6] Miller, 91 Wash.App. at 828, 964 P.2d 365.
[7] See Lingvall, 97 Wash.App. at 251, 982 P.2d 690 (quoting Roediger v. Cullen, 26 Wash.2d 690, 707, 175 P.2d 669 (1946)); Miller, 91 Wash.App. at 828-29, 964 P.2d 365 (recognizing that permission may be inferred in adverse possession); Cuillier, 57 Wash.2d at 627, 358 P.2d 958. Washington courts have also held that neighborly permission exists where the use occurred on neighboring parcels of land; mutual use of a driveway; the land is vacant, open, unenclosed and unimproved; or where a claimant uses a roadway that has been used first by the owner of the property who continues to use it for the owner's own purposes. Lingvall, 97 Wash.App. at 250-51, 982 P.2d 690; Cuillier, 57 Wash.2d at 627, 358 P.2d 958.
[8] Stoebuck, supra note 1, § 2.7, at 98; see also 25 Am.Jur.2d Easements and Profits § 45 (1996) (originally easements were incorporeal hereditaments said to lie in grant); 3 Am.Jur.2d Adverse Possession § 1 (1986) (adverse possession is a mode of acquiring title).
[9] Chaplin, 100 Wash.2d at 859-60, 676 P.2d 431.
[10] 28A C.J.S. Easements § 14 (1996).
[11] Granite Beach Holdings, LLC v. Dep't of Natural Res., 103 Wash.App. 186, 11 P.3d 847 (2000); City of Spokane v. Catholic Bishop, 33 Wash.2d 496, 514, 206 P.2d 277 (1949).
[12] No Washington cases appear to state that adverse possession is disfavored and Washington has enacted the doctrine as a statutory rule. See RCW 4.16.020; RCW 7.28.050; RCW 7.28.070; RCW 7.28.085.
[13] Miller v. Anderson, 91 Wash.App. at 827, 964 P.2d 365; Mood v. Banchero, 67 Wash.2d 835, 841, 410 P.2d 776 (1966); Anderson v. Secret Harbor Farms, 47 Wash.2d 490, 493, 288 P.2d 252 (1955) (quoting Northwest Cities Gas. Co., 13 Wash.2d at 84, 123 P.2d 771); Catholic Bishop, 33 Wash.2d at 514, 206 P.2d 277.
[14] Crescent Harbor Water Co. v. Lyseng, 51 Wash. App. 337, 341, 753 P.2d 555 (1988); Washburn v. Esser, 9 Wash.App. 169, 171, 511 P.2d 1387 (1973); Catholic Bishop, 33 Wash.2d at 514, 206 P.2d 277; Roediger, 26 Wash.2d at 709, 175 P.2d 669.
[15] See Chaplin, 100 Wash.2d at 863, 676 P.2d 431 (stating whether the facts as found constitute adverse possession is a question of law).
[16] In re Dependency of C.B., 79 Wash.App. 686, 692, 904 P.2d 1171 (1995) (citing State v. Hutsell, 120 Wash.2d 913, 918-19, 845 P.2d 1325 (1993)).