250 P.3d 1045 (2010)
160 Wash.App. 1
Roscoe IMRIE, Respondent,
v.
Steve KELLEY and Kathy Kelley, husband and wife, Appellants.
No. 28596-1-III.
Court of Appeals of Washington, Division 3.
November 16, 2010.
As Amended on Reconsideration February 3, 2011.
Publication Ordered February 3, 2011.
*1046 Kevin Montoya, for respondent.
Richard Monahan and Christopher Constantine, for appellants.
KULIK, C.J.
¶ 1 Steve and Kathy Kelley appeal the superior court's grant of a prescriptive easement to Roscoe Imrie for use of a road to access other pieces of Mr. Imrie's property. We conclude the findings of fact do not support the trial court's conclusion that Mr. Imrie's use of the road was adverse. We conclude the findings support a reasonable inference of permissive use and, thus, we reverse.

FACTS
¶ 2 The following findings of fact are unchallenged and, therefore, are verities on appeal. See State v. O'Neill, 148 Wash.2d 564, 571, 62 P.3d 489 (2003).
¶ 3 In 1951, Roscoe Imrie, his father, and his brothers leased property in Klickitat County from T.V. Wilkins. Members of the Imrie family began purchasing this property in 1956. In 1962, Mr. Wilkins executed and recorded a warranty deed transferring the property to Roscoe Imrie and his two brothers. By 1966, both brothers had quitclaimed their interest in the property (hereinafter Imrie property) to Roscoe Imrie.
¶ 4 In 1951, a road crossed from Newell Road, ran through property known as the Gaines property, then crossed land owned by the Department of Natural Resources (DNR), and then continued back onto the Gaines property until it ran onto Bureau of *1047 Land Management (BLM) land. The road then crossed the BLM land and continued onto the Imrie property. This road was commonly referred to as "Gaines Road." Clerk's Papers (CP) at 157. When the Imries started leasing their property, there were gates across Gaines Road at the points where the road entered the Gaines property from Newell Road and where it left the Gaines property and crossed onto BLM property. A fence enclosed the entirety of the Gaines property.
¶ 5 Simply stated, Gaines Road detours briefly from the Gaines property to DNR property, then it comes back to the Gaines property where it continues to BLM property, and then across BLM property onto the Imrie property.[1] This means that Mr. Imrie seeks a prescriptive easement on the Gaines property.
¶ 6 Mr. Imrie never asked for permission to use Gaines Road. From 1951 to 1961, Mr. Imrie used the gate across Gaines Road near Newell Road to access the Gaines property and no one tried to stop him. In 1965, Charlie Gaines locked this gate to address concerns regarding hunters and traffic. Mr. Gaines provided Mr. Imrie with a key to the gate. Prior to 1965, the gate was not locked.
¶ 7 From 1951 to the present, Mr. Imrie has continuously used Gaines Road to haul supplies to his livestock, to monitor their pasture and water, to build fences, and to herd livestock. Since 1951, Mr. Imrie has also used Gaines Road to access his property and to hunt on public property. The Gaineses were aware of Mr. Imrie's use of Gaines Road because they lived next to the road.
¶ 8 In 1974, Larry and Steve Kelley leased the Gaines property for farming and grazing. In 1978, Mr. Imrie began allowing hunters to hunt on his property for a fee. Mr. Imrie used Gaines Road approximately 10 times per year for his fee hunting business.
¶ 9 In 2001, Larry Kelley sold his interest in the land to Steve Kelley. In 2001, Steve Kelley locked the gate across Gaines Road near Newell Road. The lock prevented Mr. Imrie from using Gaines Road. Mr. Imrie broke the lock and placed another lock on the gate.
¶ 10 In January 2007, Mr. Imrie filed a complaint for a prescriptive easement and a motion for a preliminary injunction against the Kelleys. The trial court granted the preliminary injunction, preventing the Kelleys from impeding Mr. Imrie's use of Gaines Road.
¶ 11 Following a bench trial, the court granted Mr. Imrie a prescriptive easement allowing him to use Gaines Road to service his livestock, graze livestock, maintain fences, and for personal and social hunting. The court determined that the easement would burden Kelley parcels I and J and would benefit Imrie parcels A, B, C, and D. The court concluded that Mr. Imrie's right to a prescriptive easement ripened in 1961. The court also concluded that "[t]he prescriptive easement may not be used for fee hunting purposes because fee hunting did not exist in 1961 and the scope of the easement cannot be increased." CP at 163.
¶ 12 The Kelleys appeal, asserting 26 assignments of error, with 37 issues pertaining to those assignments of error. Their main argument is that Mr. Imrie's use of Gaines Road was permissive.

ANALYSIS
¶ 13 This court reviews a trial court's challenged findings of fact for substantial evidence. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wash.2d 873, 879, 73 P.3d 369 (2003). "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise." In re Marriage of Hall, 103 Wash.2d 236, 246, 692 P.2d 175 (1984). The trial court's conclusions of law are reviewed to determine if they are supported by the findings of fact. Hegwine v. Longview Fibre Co., 132 Wash. App. 546, 555, 132 P.3d 789 (2006), aff'd, 162 Wash.2d 340, 172 P.3d 688 (2007). A finding of fact that is mislabeled as a conclusion of law is reviewed as a finding of fact. State v. *1048 Ross, 141 Wash.2d 304, 309, 4 P.3d 130 (2000). A prescriptive easement presents a mixed question of law and fact. Lee v. Lozier, 88 Wash.App. 176, 181, 945 P.2d 214 (1997).
¶ 14 Prescriptive rights are not favored by the law. Nw. Cities Gas Co. v. W. Fuel Co., 13 Wash.2d 75, 83, 123 P.2d 771 (1942). To establish a prescriptive easement, the claimant must show that his or her use of the servient land was "(1) open and notorious, (2) over a uniform route, (3) continuous and uninterrupted for 10 years, (4) adverse to the owner of the land sought to be subjected, and (5) with the knowledge of such owner at a time when he was able in law to assert and enforce his rights." Kunkel v. Fisher, 106 Wash.App. 599, 602, 23 P.3d 1128 (2001). The claimant has the burden of establishing the existence of each element. Nw. Cities Gas, 13 Wash.2d at 84, 123 P.2d 771. Historically, if a person used another's land openly, notoriously, continuously, and uninterruptedly for a period of 10 years, a presumption arose that the use was adverse. The burden was then shifted the owner of the servient estate to show that the use was permissive. Id. at 85, 123 P.2d 771.
¶ 15 Now, in developed land cases like this one, an inference of permissive use applies when a court can reasonably infer that the use was permitted by neighborly sufferance or accommodation. Drake v. Smersh, 122 Wash.App. 147, 154, 89 P.3d 726 (2004). A use that is permissive at its inception cannot ripen into a prescriptive right, no matter how long the use may continue, "unless there has been a distinct and positive assertion by the dominant owner of a right hostile to the owner of the servient estate." Nw. Cities Gas, 13 Wash.2d at 84, 123 P.2d 771. "A party can establish a prescriptive right even though the owner of the servient estate and others who wanted to go on the property also used it, so long as the claimant exercises and claims his right independent of others." Drake, 122 Wash.App. at 151-52, 89 P.3d 726.
¶ 16 A. Uniform Route, Open, Notorious, Continuous, and Uninterrupted. The court concluded that there was evidence to show that Mr. Imrie's use of Gaines Road was open and notorious, over a uniform route, continuous and uninterrupted for 10 years, with the Kelleys' knowledge when they could have asserted and enforced their rights. After concluding that Mr. Imrie had established four elements of a prescriptive easement, the court applied a presumption that Mr. Imrie's use of the road was adverse during the period between 1951 to 1961.
¶ 17 B. Adverse Use. The Kelleys challenge the court's conclusion that Mr. Imrie's use of Gaines Road was adverse. They assert that Mr. Imrie's use of the road was permissive at its inception and that Mr. Imrie's use of the road for the required period was insufficient to establish adverse use.
¶ 18 A claimant's use is adverse when he or she "uses the property as the true owner would, under a claim of right, disregarding the claims of others, and asking no permission for such use." Kunkel, 106 Wash.App. at 602, 23 P.3d 1128. Use may be express or implied. Id. Use is not adverse if it is permissive. Id. "Whether use is adverse or permissive is generally a question of fact, but if the essential facts are not in dispute, it can be resolved as a question of law." Drake, 122 Wash.App. at 152, 89 P.3d 726.
¶ 19 Mr. Imrie asserts his use of the road was adverse because he used the road from 1951 to 1961 and did not ask permission to do so. The court found that Mr. Imrie did not ask permission nor did the Gaineses give permission. The court also found that the road was used by the Gaineses to access their home.
¶ 20 However, mere use without permission may not be sufficient to establish adverse use. See Cuillier v. Coffin, 57 Wash.2d 624, 628, 358 P.2d 958 (1961). In Cuillier, the claimants asserted a prescriptive easement to use an orchard road owned and used by their neighbors. The claimants did not ask permission and established use for the prescriptive period. The court concluded that unchallenged use was but one circumstance from which an inference of adverse use might be drawn. Id. at 627, 358 P.2d 958. The court also concluded that the identity of the person who made and used *1049 the road was another consideration to be examined. Id. The court explained that where the owner shares use of the road with the claimant, there is an inference of neighborly accommodation. Id. Significantly, the court held that "[t]he fact that no permission was expressly asked, and that no permission was expressly given, does not preclude a use from being permissive under the circumstances." Id. at 626, 358 P.2d 958. The court concluded that even though the claimants used the road, no easement had been established because the record was devoid of evidence demonstrating a purpose to impose a separate servitude on the owner's property. Id. at 628, 358 P.2d 958.
¶ 21 Similarly, in Kunkel, the fact that the plaintiff's trucks had traversed a gravel road over the defendant's land for 20 years was found insufficient to overcome the presumption of permission. Kunkel, 106 Wash.App. at 605, 23 P.3d 1128. In Kunkel, the claimant established that (1) he used the road for the relevant time period, (2) successive owners were aware of the claimant's use, (3) no one ever objected, (4) the claimant brought and spread gravel on one occasion, and (5) the claimant had been assured that his use of the road was not a problem. Id. at 604-05, 23 P.3d 1128.
¶ 22 In Drake, the court considered whether there was evidence to support a reasonable inference of permissive use. Drake, 122 Wash.App. at 154, 89 P.3d 726. The court concluded that permissive use could not be inferred (1) where the driveway in question was the only existing access to the property, (2) the driveway was located on the neighbor's property, (3) the claimant did not ask for, or receive, permission to use the driveway or to extend the driveway to his own property with a bulldozer, and (4) there was no relationship between the claimant and the neighbor from which one could infer permissive use. Id.
¶ 23 We must determine whether the trial court's findings support its conclusion that Mr. Imrie's use was adverse during the period from 1951 to 1961 or whether the findings support an inference that the use was permissive.
¶ 24 The findings establish that Mr. Imrie used the road without permission and that the Kelleys and their predecessors were aware of this use. The court also found that the BLM property and a portion of the Imrie property were only accessible through the Gaines property. Significantly, even though Mr. Imrie never asked permission, he used the road with the knowledge of the Gaineses. Moreover, the findings fail to establish that at any time between 1951 to 1961, Mr. Imrie acted in a manner demonstrating a right to use the property without regard to the wishes of the owner. Consequently, the findings here do not support adverse use, but, instead, support an inference of neighborly accommodation.
¶ 25 Mr. Imrie attempts to distinguish Cuillier and Kunkel by asserting that Mr. Imrie had shared the cost of graveling Gaines Road, and that Mr. Gaines asked Mr. Imrie's consent before Mr. Gaines put a lock on the gate. These facts are insufficient to establish adverse use.
¶ 26 There is no mention of the graveling of the road in the court's findings. Moreover, here, as in Kunkel, the unsuccessful claimant provided and spread gravel on only one occasion. And while testimony indicates that Mr. Imrie provided gravel on one occasion in 1962, this one occasion occurred after the prescriptive easement period of 1951 to 1961 adopted by the trial court. Likewise, the incident where Mr. Gaines locked the gates and gave Mr. Imrie a key also occurred after the 1951 to 1961 period adopted by the court.
¶ 27 Mr. Imrie claims that Mr. Gaines asked his consent when the lock was put on the gate in 1965. But the court's findings do not state that anyone asked Mr. Imrie's consent before the gate was locked in 1965. In Millard v. Granger, 46 Wash.2d 163, 164, 279 P.2d 438 (1955), the Millards put a gate on the road, but gave keys to everyone who wished to use the road. The court found that this gate served as "notice to the world that the road was not a public road," and that the furnishing of keys to the gate was an overt act of permission to use the road. Id. at 165, 279 P.2d 438.
*1050 ¶ 28 Mr. Imrie also argues that he thought he had a right to drive on Gaines Road. He testified that when he began leasing the property, a Gaines employee told him that Gaines Road was the access for the area. But Mr. Imrie's subjective beliefs are irrelevant to the issue of adverse use. See Chaplin v. Sanders, 100 Wash.2d 853, 861, 676 P.2d 431 (1984).
¶ 29 The findings here fail to support the trial court's conclusion that Mr. Imrie's use of the road was adverse. To the contrary, the findings here support a reasonable inference of permissive use. Given these findings, the trial court erred by granting a prescriptive easement to Mr. Imrie. Consequently, we need not address the Kelleys' other issues on appeal.
¶ 30 C. Preliminary Injunction. The Kelleys request attorney fees to defeat a wrongfully issued injunction. The trial court issued an injunction to maintain the status quo.
¶ 31 In Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 143, 937 P.2d 154 (1997), the court explained that the purpose for allowing a party to recover attorney fees to defeat a wrongfully issued injunction was equitable and was to deter a party from seeking an injunction prior to a trial on the merits. The application of this rule is discretionary. Id.
¶ 32 The trial court did not abuse its discretion by maintaining the status quo providing Mr. Imrie use of Gaines Road. Therefore, we deny attorney fees to the Kelleys.
¶ 33 We reverse the trial court's grant of a prescriptive easement, and we deny attorney fees.
WE CONCUR: BROWN and SIDDOWAY, JJ.
NOTES
[1] Although not clearly explained in the findings, Mr. Imrie follows the road west through BLM land to get to Imrie parcels A through C. To access parcel D, Mr. Imrie must follow Gaines Road to the end of the Gaines property, and then proceed east on foot or on horseback to parcel D.