# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ZONNEBLOEM, LLC, a Washington limited liability company, MANDL HOLDINGS, LLC, a Washington limited liability company, | No. 49308-0-II |
| Respondents/Cross-Appellants, | |
| v. | PART PUBLISHED OPINION |
| BLUE BAY HOLDINGS, LLC, a Washington limited liability company, | |
| Appellant/Cross-Respondent, | |

MAXA, A.C.J. – Blue Bay Holdings, LLC appeals the trial court's summary judgment order dismissing its damages claim against Zonnebloem, LLC and Mandl Holdings, LLC for interference with a prescriptive easement that Blue Bay claimed over Zonnebloem's and Mandl's properties. Blue Bay alleged that its prescriptive easement followed the historical route of an electric power line that went from a power pole on the edge of Zonnebloem's parking lot property, across the Mandl building, and to Blue Bay's building.

After Blue Bay demolished an existing structure and replaced it with a new building, it asked Puget Sound Energy (PSE) to reconnect the power line to its new building. But PSE required a written easement from Zonnebloem and Mandl before it would reconnect the line,

even if Blue Bay had a prescriptive easement along the power line's historical route. Zonnebloem and Mandl could not agree with PSE on the easement's terms, and Blue Bay was required to obtain power through a different route at significant expense. Blue Bay asserted that Zonnebloem and Mandl's refusal to grant an express easement to PSE constituted a wrongful interference with Blue Bay's use of its claimed prescriptive easement.

On summary judgment, the trial court dismissed Blue Bay's claim for damages against Zonnebloem and Mandl for wrongful interference with the claimed prescriptive easement. After a bench trial, the court ruled that Blue Bay had established a prescriptive easement.

In the published portion of this opinion, we hold that although an owner of property subject to an easement has an obligation to not unreasonably interfere with the use of an easement, as a matter of law Zonnebloem and Mandl's refusal to grant an express easement to PSE for an area broader than the prescriptive easement did not constitute unreasonable interference. Therefore, we affirm the trial court's dismissal on summary judgment of Blue Bay's claim for wrongful interference with its prescriptive easement.

In the unpublished portion of this opinion, we address and reject Zonnebloem and Mandl's claim that the trial court erred in ruling that Blue Bay had a prescriptive easement over their properties and Blue Bay's claim that the trial court erred in ruling that Mandl had acquired a portion of Blue Bay's property by adverse possession. Accordingly, we affirm the trial court on all issues on appeal.

FACTS

*Power Access to Blue Bay's Property*

Blue Bay and Mandl own adjoining commercial buildings on Front Street in Poulsbo, and Zonnebloem owns a parking lot located behind those buildings. Historically, a line from a power pole on Zonnebloem's parking lot provided electric power to both the Mandl building and the Blue Bay building. The line connected to the Mandl building before running down the side of that building and connecting to the Blue Bay building. When Blue Bay demolished the existing building on its property, it disconnected the power line.

Blue Bay subsequently requested that PSE reconnect the power line to its new building. But PSE required a written easement for an area two feet on either side of the power line as it ran from the power pole on the Zonnebloem parking lot to the side of Blue Bay's building. Zonnebloem and Mandl negotiated with PSE, but PSE would not agree to Zonnebloem and Mandl's request to include a termination clause in the easement. Therefore, no easement was executed, PSE would not reconnect the power line along the historical route, and Blue Bay was forced to install a power connection along a different route at a cost of over $50,000.

*Quiet Title Lawsuit*

In October 2013, Zonnebloem and Mandl filed a complaint against Blue Bay regarding certain property disputes. Blue Bay filed a counterclaim, alleging that it had a prescriptive easement for the power line from the power pole on the Zonnebloem property to the Blue Bay building. Blue Bay also asserted a damages claim based on the allegation that Zonnebloem and Mandl's refusal to grant an express easement with PSE unreasonably interfered with Blue Bay's claimed prescriptive easement.

3

Zonnebloem and Mandl filed a motion for summary judgment on Blue Bay's damages claim. The trial court granted summary judgment and dismissed Blue Bay's damages claim for interference with the claimed prescriptive easement.

Blue Bay appeals the trial court's summary judgment dismissal of its damages claim.

ANALYSIS

A.    SUMMARY JUDGMENT STANDARD

We review summary judgment orders de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). On summary judgment, we construe all evidence and reasonable inferences in favor of the nonmoving party. *Id.* Summary judgment is appropriate when the record shows "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c); *see Keck*, 184 Wn.2d at 370. A fact is material if it affects the case's outcome. *Keck*, 184 Wn.2d at 370 n.8. A genuine issue of material fact exists if the evidence would be sufficient for a reasonable jury to find in favor of the nonmoving party. *Id.* at 370. "If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment." *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865, 324 P.3d 763 (2014).

On summary judgment, the moving party has the initial burden to show there is no genuine issue of material fact. *Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 964, 335 P.3d 1014 (2014). A moving defendant meets this burden by showing that there is an absence of evidence to support the plaintiff's case. *Id.* Once the moving party has made such a showing, the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's

4

contentions and show a genuine issue of material fact. *See Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169, 273 P.3d 965 (2012).

B.    CLAIM FOR INTERFERENCE WITH A PRESCRIPTIVE EASEMENT

Blue Bay argues that the trial court erred in dismissing its damages claim for wrongful interference with its claimed prescriptive easement, which it argues occurred when Zonnebloem and Mandl refused to grant a written easement to PSE.[1]  We disagree.

1.    Legal Principles

An easement is a nonpossessory right to use the land of another. *Maier v. Giske*, 154 Wn. App. 6, 15, 223 P.3d 1265 (2010).  The person who benefits from an easement, known as the easement holder or dominant estate owner, has a property interest in the land subject to the easement, known as the servient estate. *M.K.K.I., Inc. v. Krueger*, 135 Wn. App. 647, 654-55, 145 P.3d 411 (2006).  The easement represents a burden on the servient estate. *Id.* at 655.

In general, the owner of a servient estate may use his or her property in any reasonable manner that does not interfere with the easement holder's use of the easement. *See Littlefair v. Schulze*, 169 Wn. App. 659, 665, 278 P.3d 218 (2012).  In addition, a servient estate owner may engage in reasonable conduct that affects access to the easement as long as that conduct does not unreasonably interfere with the easement holder's use. *See Nw. Props. Brokers Network, Inc. v. Early Dawn Estates Homeowner's' Ass'n*, 173 Wn. App. 778, 792-93, 295 P.3d 314 (2013) (addressing the installation of a gate that restricted access to an easement).  The reasonableness

---

[1] Zonnebloem and Mandl initially argue that Blue Bay did not preserve this issue because it cites different authorities on appeal than it cited in the trial court.  But RAP 2.5(a), which bars errors raised for the first time on appeal, does not prohibit parties from citing new authorities on appeal. *See Greenfield v. W. Heritage Ins. Co.*, 154 Wn. App. 795, 801, 226 P.3d 199 (2010).  Because Blue Bay clearly raised this issue before the trial court, it was preserved for appeal.

of a restraint depends on a balancing of the necessity of the restraint for the protection of the servient estate against the degree of interference with the easement holder's use. *Id.* at 793.

The *Restatement (Third) of Property: Servitudes* states the same rule: "[T]he holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude." RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9 (AM. LAW INST. 2000). Comment c to that section further states, "The owner of the servient estate is not entitled to interfere unreasonably with legitimate enjoyment of the servitude. . . . Actions that make it more difficult to use an easement . . . are prohibited by the rule stated in this section, unless justified by the needs of the servient estate." RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9 cmt. c.

An easement holder may obtain any appropriate remedy for unreasonable interference with an easement. *See Bauman v. Turpen*, 139 Wn. App. 78, 92, 160 P.3d 1050 (2007) (citing RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 8.3). The Restatement states that one appropriate remedy is a claim for compensatory damages. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 8.3. This statement is consistent with the general rule that the holder of a nonpossessory interest in property can sue for damage to that interest. *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 458, 243 P.3d 521 (2010).

Under these authorities, a servient estate owner is liable for damages if he or she unreasonably interferes with the easement holder's use of the easement. Further, in this context there is no legal difference between the rights of an express easement holder and the rights of a prescriptive easement holder. Therefore, we apply the same standard of liability to interference with a prescriptive easement.

2.      Scope of Servient Estate Owner's Obligation

Blue Bay argues that the evidence presented at summary judgment showed that

Zonnebloem and Mandl interfered with its claimed prescriptive easement by not granting an

express easement over the Zonnebloem and Mandl properties to PSE.  Blue Bay asserts that the

reasonableness of Zonnebloem and Mandl's refusal to grant PSE an easement must be

determined as a question of fact rather than on summary judgment.

Blue Bay's argument is based on the assumption that a servient estate owner has a legal

obligation in certain circumstances to take affirmative action – in this case, to grant an express

easement to PSE – to facilitate the easement holder's use of the easement.  No Washington case

has addressed this issue.[2]

Blue Bay relies on a California case, *Dolnikov v. Ekizian*, in which the court held that a

servient estate owner could be liable for unreasonable interference with an easement for failing

to take an affirmative action that was necessary for the easement holder to use the easement.  222

Cal. App. 4th 419, 422, 165 Cal. Rptr. 3d 658 (2013).  In that case, the easement holder had an

express easement for a driveway over the servient estate that had fallen into disrepair.  *Id.* at 423-

24.  The easement holder was constructing two houses on the parcel serviced by the easement

and wanted to repair the easement driveway.  *Id.*  In order to obtain construction permits for the

---

[2] Blue Bay argues that because Zonnebloem and Mandl did not cite any controlling authority in support of its summary judgment motion, they did not meet their burden as the moving party and summary judgment should have been denied on that basis.  This argument reflects a misunderstanding of summary judgment procedure.  On summary judgment, the moving party has the initial burden to show there is no genuine issue of material *fact*.  *Lee*, 183 Wn. App. at 964.  A moving defendant can meet this burden by showing that there is an absence of evidence to support the plaintiff's case.  *Id.*  But there is no requirement that a moving party present controlling *legal* authority to obtain summary judgment, particularly when no such authority exists.

driveway, the easement holder needed the servient estate owner to sign a community driveway covenant. *Id.* at 424-25. The servient estate owner repeatedly refused, resulting in a revocation of the driveway permits. *Id.* A jury found the servient estate owner liable for interfering with the easement, and the trial court awarded damages to the easement holder and required the servient estate owner to sign any necessary forms. *Id.* at 426-27.

On appeal, the court held that a servient estate owner must not unreasonably interfere with the use of an easement, relying on the Restatement (Third) of Property: Servitudes § 4.9 and comment c. *Dolnikov*, 222 Cal. App. 4th at 429-30. The court stated that whether the servient estate owner's particular conduct constitutes an unreasonable interference with the easement is a question of fact. *Id.* at 430. But the court concluded that the servient estate owner's refusal to sign the covenant was unreasonable and could constitute an unreasonable interference with the easement holder's use and enjoyment of the easement. *Id.* at 431.

We acknowledge that, as in *Dolnikov*, there may be circumstances in which a servient estate owner can be liable for wrongful interference with an easement for failing to take a reasonable affirmative action to facilitate the easement holder's use of the easement. But the existence of such a rule does not resolve this case. The question here is whether Zonnebloem and Mandl's failure to take a specific affirmative action – granting an express easement to PSE – creates a genuine issue of material fact on wrongful interference with Blue Bay's prescriptive easement.

Two factors are significant here. First, by granting an express easement to PSE, Zonnebloem and Mandl would relinquish a valuable property right – part of the bundle of rights associated with fee ownership of property – to a third party. *See Kiely v. Graves*, 173 Wn.2d

8

926, 936, 271 P.3d 226 (2012). The facts here are significantly different than in *Dolnikov*, where the servient estate owner was required to undertake only a ministerial act to allow the easement holder to use the easement for a community driveway. Blue Bay provides no authority for the proposition that a servient estate owner can be subject to liability for failing to give up a property right to facilitate an easement holder's use of the easement.

Second, the easement that PSE requested and that Blue Bay demanded be granted was for an area broader than the area of use that created the prescriptive easement. Again, the facts here are significantly different than in *Dolnikov*, where the servient estate owner's requested act did not change the parameters of the easement. Generally, a trial court has no authority to change the location of an easement at the request of an easement holder. *See Kave v. McIntosh Ridge Primary Road Ass'n*, 198 Wn. App. 812, 820-21, 394 P.3d 446 (2017). Blue Bay provides no authority for the proposition that a servient estate owner can be subject to liability for failing to grant an express easement that is broader – covering a different location – than the existing prescriptive easement in order to facilitate the easement holder's use of the prescriptive easement.

Based on these two factors, we hold as a matter of law that (1) it was not unreasonable for Zonnebloem and Mandl to refuse to grant an express easement to PSE even though that refusal interfered with Blue Bay's use of its prescriptive easement, and (2) their refusal did not constitute an unlawful interference with Blue Bay's claimed prescriptive easement. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Zonnebloem and Mandl on Blue Bay's damages claim.

CONCLUSION

We affirm the trial court's dismissal on summary judgment of Blue Bay's damages claim for interference with its claimed prescriptive easement. We consider the remaining issues in the unpublished portion of this opinion. We affirm the trial court on all issues on appeal.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

The trial in this case involved various property disputes among the parties. The only issues on appeal are Blue Bay's claim of a prescriptive easement for power and cable lines and Mandl's adverse possession claim for a small area of Blue Bay's property called Area #3.

*Prescriptive Easement Claim*

Mandl is owned by Marion and Loretta Sluys, who have owned the Mandl property in various ownership forms since 1971. They purchased the two Zonnebloem properties in 2001 and transferred ownership to Zonnebloem in 2005. Zonnebloem is owned by the Sluyses' son Daniel Sluys and a partner. Blue Bay purchased its property in 2012.

The Blue Bay and Mandl buildings run parallel to each other, facing Front Street. The northwest wall of the Mandl building historically abutted the Blue Bay building. The back of the Blue Bay and Mandl properties slope upward to the Zonnebloem parking lot, which is approximately level with the second story of the buildings. A wood pathway leads from the back door of the Mandl building to the Zonnebloem parking lot. After purchasing its property in 2012, Blue Bay demolished the existing building and constructed a new structure.

10

Electricity for the Mandl building and the Blue Bay building came from an overhead power line that originated at a power pole on the southern edge of the Zonnebloem parking lot. That route was established before 1971, when the Sluys purchased the Mandl building. The parties submitted no evidence regarding the circumstances surrounding the installation of the power line.

The power line's path ran from the power pole, above a portion of the Zonnebloem and Mandl properties, to two "strikes" – power boxes – located on the Mandl building's northwest wall. Blue Bay's line ran from one strike down the side of the Mandl building and to the Blue Bay building. Blue Bay's cable line followed the same route. After Blue Bay disconnected its power and cable lines to construct its new building, it requested that PSE reconnect the power line. However, Blue Bay requested that the lines run directly to a strike on Blue Bay's new building rather than to the strike on the Mandl building.

*Use and Possession of Area #3*

Blue Bay and Mandl used each other's property at various locations along their property lines. One such location, Area #3, was a triangular area along the hillside located immediately behind the Blue Bay building. One side extended along the east side of Blue Bay's property for 5.76 feet, a second side extended for 23.97 feet parallel to the Zonnebloem parking lot, and the third side ran nearly parallel to the Blue Bay property's southern line toward the Zonnebloem parking lot.

Area #3 is included in Blue Bay's title. However, the northeast corner of the Mandl building and a retaining wall behind the building encroached into the area. The remainder of Area #3 is largely inaccessible and is covered by blackberries and other vegetation. Blue Bay

conceded that Mandl has adversely possessed the portions of Area #3 on which the Mandl retaining wall and building sit, but contested the remaining area.

The parties elicited testimony and submitted declarations into evidence about Area #3. Marion Sluys testified that he would clear the vegetation when necessary. He also testified that he maintained a plum tree in the corner of Area #3 before removing it approximately 30 years ago. Ricky Moon, a contractor for Mandl since 2003, testified that he cleared the area a few times each year for two or three years. Kristin Reed, who had done maintenance for Mandl for 10 years at the time of trial, testified that she weeded and sprayed the area. Tammy Mattson, who rented the second story of the Mandl building, and Daniel Sluys both stated that Reed would perform yard maintenance in Area #3 quite a bit in the summer. Daniel Sluys agreed that during the growing season, Reed would do this on a regular schedule.

Blue Bay submitted two declarations by previous owners of its property. Roberto Soltero, who owned a restaurant on the Blue Bay property from 2002 to 2005, stated that he would "trim and maintain" the vegetation in Area #3. Clerk's Papers (CP) at 195-96. Eric Waltenburg, who owned the property from 2007-2012, stated that "[o]n occasion [he] would maintain the area" and that Mandl did not do so to the best of his knowledge. CP at 570 (Ex. 65a).

Mandl also elicited testimony about the pathway leading from the Mandl building and crossing over Area #3. Marion Sluys testified that the pathway had originally been a rubber mat that led to a small bridge spanning the gap between the hillside and the Mandl building. Mattson testified that the footbridge was located near where Mandl had recently installed a new HVAC system, on the northern corner of Area #3. Marion Sluys testified that this makeshift pathway

was in place until 2004 or 2005, at which point Mandl installed a wooden walkway in the same space.

*Trial Court's Ruling*

After a bench trial, the trial court entered findings of fact and conclusions of law. The court ruled, among other things, that Blue Bay had established a prescriptive easement for the electric and cable lines from the power pole on the Zonnebloem parking lot property to Blue Bay's building and that Mandl had adversely possessed the entirety of Area #3. The trial court entered a judgment that (1) quieted title in Blue Bay to an easement for electric and cable lines from the power pole on Zonnebloem's property to Blue Bay's new building, and (2) quieted title in Mandl to Area #3.

ANALYSIS

A.      STANDARD OF REVIEW

Blue Bay's prescriptive easement claim for the power and cable lines and Mandl's adverse possession claim for Area #3 both involve the trial court's findings of fact and conclusions of law after a bench trial. When reviewing a trial court's decision following a bench trial, we ask whether substantial evidence supports the trial court's findings of fact and whether those findings support the trial court's conclusions of law. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). Substantial evidence is the quantum of evidence sufficient to persuade a rational, fair-minded person that the premise is true. *Id.* We view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party, and we do not review the trial court's credibility determinations. *Columbia State Bank v. Invicta Law Group PLLC*, 199 Wn. App. 306, 319, ___ P.3d ___ (2017).

We review both the trial court's application of facts to law and its legal conclusions de novo. *Viking Bank*, 183 Wn. App. at 712. We review legal conclusions de novo even if those conclusions are styled as findings of fact. *Kitsap County Consol. Hous. Auth. v. Henry-Levingston*, 196 Wn. App. 688, 697, 385 P.3d 188 (2016).

B.    EXISTENCE OF A PRESCRIPTIVE EASEMENT

Zonnebloem and Mandl argue that the trial court erred in ruling that Blue Bay had established a prescriptive easement for electric and cable lines. Specifically, they claim that Blue Bay did not establish adverse use, one of the requirements for a prescriptive easement. We disagree.

1.    Legal Principles

An easement can be created by an express grant in a written instrument or by adverse use.[3] *810 Props. v. Jump*, 141 Wn. App. 688, 696, 170 P.3d 1209 (2007). Establishing an easement through adverse use, known as a prescriptive easement, requires a person claiming the eaeement to use another's land for a period of 10 years in a manner that satisfies certain elements. *Gamboa v. Clark*, 183 Wn.2d 38, 43, 348 P.3d 1214 (2015). When the claimant satisfies the requirements of a prescriptive easement for 10 years, ownership of that easement automatically vests without the necessity of filing suit to quiet title. *See Gorman v. City of Woodinville*, 175 Wn.2d 68, 72, 74, 283 P.3d 1082 (2012) (stating rule for adverse possession).

Prescriptive rights are not favored in the law. *Gamboa*, 183 Wn.2d at 43. To establish a prescriptive easement, the person claiming the easement has the burden of proving that he or she

---

[3] There also are other types of non-express easements that are not relevant here. *See Boyd v. Sunflower Props. LLC*, 197 Wn. App. 137, 143, 389 P.3d 626 (2016).

used another person's land for 10 years in a manner that (1) was open and notorious; (2) was continuous or uninterrupted; (3) passed over a uniform route; (4) was adverse to the servient estate owner; and (5) occurred with the servient estate owner's knowledge, so that the servient owner could have asserted his or her legal rights. *Id.*

Zonnebloem and Mandl challenge only the adverse use element. Whether the claimant's use of another's property was adverse or permissive generally is a question of fact, but the nature of the use can be resolved as a question of law if the essential facts are undisputed. *Imrie v. Kelley*, 160 Wn. App. 1, 8, 250 P.3d 1045 (2010).

We review whether a claimant has established the elements of a prescriptive easement as a mixed question of fact and law. *Gamboa*, 183 Wn.2d at 44. We determine whether substantial evidence supports the trial court's findings of fact. *Imrie*, 160 Wn. App. at 6. But we review de novo whether the facts as found establish a prescriptive easement. *Gamboa*, 183 Wn.2d at 44.

2. Adverse Use Requirement

Adverse use generally means that the claimant's use was without the landowner's permission. *Id.* Use is adverse when the claimant " 'uses the property as the true owner would, under a claim of right, disregarding the claims of others, and asking no permission for such use.' " *Imrie*, 160 Wn. App. at 8 (quoting *Kunkel v. Fisher*, 106 Wn. App. 599, 602, 23 P.3d 1128 (2001)). However, the fact that no permission was expressly asked and no permission was expressly given does not preclude a use from being permissive as opposed to adverse. *Cuillier v. Coffin*, 57 Wn.2d 624, 626, 358 P.2d 958 (1961).

The starting point of the adverse use analysis is the claimant's first use of the landowner's property. A person's use generally cannot be adverse when the use is "permissive

in its inception." *Gamboa*, 183 Wn.2d at 45. A use can be permissive in its inception either expressly, as when the landowner grants actual permission, or when the use arises " 'out of mutual neighborly acquiescence.' " *Id.* (quoting *Roediger v. Cullen*, 26 Wn.2d 690, 713, 175 P.2d 669 (1946)). A use permissive at its inception cannot develop into a prescriptive right no matter how long it continues unless the user subsequently makes a distinct and positive assertion of a right hostile to the owner. *Gamboa*, 183 Wn.2d at 45.

Even if a use was not permissive in its inception, we presume in certain situations that a claimant enters onto land with the landowner's permission. *Id.* at 44. The presumption of permissive use applies in three factual scenarios: (1) when the land entered is unenclosed land, (2) when it is reasonable to infer that the use of enclosed or developed land was permitted by neighborly sufferance or acquiescence, or (3) when the landowner created or maintained a road and the neighbor used the road in a noninterfering manner. *Id.*

The person claiming a prescriptive easement may defeat the presumption of permissive use by showing either that the facts and circumstances demonstrate that the use was adverse and hostile to the owner's rights or that the landowner has indicated by some action an admission that the claimant has a legal right to the easement. *Id.* at 44-45. To show that land use is adverse and hostile to the rights of the owner, the claimant must present evidence that "he or she interfered with the owner's use of the land in some manner." *Id.* at 52.

When the alleged easement involves a road, who created the road and who used it are important factors in determining whether we can infer neighborly acquiescence. *Cuillier*, 57 Wn.2d at 627. When the landowner constructs and uses the road and the claimant simply shares

16

the road, there is an inference of permissive use.[4]  *Id.*  Such an inference is particularly appropriate when the claimant's use does not interfere with the landowner's use.  *Miller v. Jarman*, 2 Wn. App. 994, 998, 471 P.2d 704 (1970).

But evidence that the claimant constructed the road for his or her exclusive use is more persuasive of adverse use.  *Cuillier*, 57 Wn.2d at 627.  And the joint efforts of the claimant and landowner to construct a common driveway to be used by both also tends to indicate adverse use. *Jarman*, 2 Wn. App. at 998.

In addition, earlier cases held that use of another's property for the 10-year prescriptive period without formal permission created an opposite presumption – that the use was adverse. *See Cuillier*, 57 Wn.2d at 626-27.  The court in *Cuillier* clarified that a more accurate statement is that the claimant's unchallenged use of another's property for the 10-year prescriptive period allows an inference of adverse use that may be considered along with other circumstances.  *Id.* at 627.[5]

3.    Absence of Specific Finding on Adverse Use

The trial court did not make a specific finding of fact that the running of the power and cable lines from the power pole on Zonnebloem's property to Blue Bay's new building constituted an adverse use.[6]  Zonnebloem and Mandl argue that the absence of this finding means

---

[4] This statement in *Cuillier* also is the basis for the third factual scenario supporting a presumption of permissive use.  *Gamboa*, 183 Wn.2d at 44.

[5] The court in *Gamboa* acknowledged this clarification in *Cuillier*, but chose not to resolve whether unchallenged use created a presumption of adverse use or merely an inference.  183 Wn.2d at 46, 50.

[6] We believe that the trial court likely erred in changing the path of the prescriptive easement. Blue Bay's established use was from the power pole to the strike on the Mandl building, and the

17

that there was no factual support for the trial court's conclusion that Blue Bay established the elements of a prescriptive easement. We disagree.

In certain situations we can imply an essential finding of fact. *See Little v. King*, 160 Wn.2d 696, 707, 161 P.3d 345 (2007) (in reviewing a default judgment, implying a finding of fact that the plaintiff suffered damages in the amounts awarded). Here, the trial court expressly listed in its conclusions of law the five elements of a prescriptive easement. And the court made an express "finding of fact" that "Blue Bay has established that it is entitled to a prescriptive easement for power from the PSE power pole directly to a strike on the Blue Bay Building."[7] CP at 463. In reaching this conclusion, the court necessarily made a factual finding that Blue Bay had satisfied each of the elements of a prescriptive easement, including adverse use.

The better course of action for the trial court would have been to make express findings of fact on the five elements of a prescriptive easement. However, we will treat the court's conclusion that Blue Bay was entitled to a prescriptive easement as an implied finding of fact that Blue Bay's use of the power and cable lines was adverse.

---

trial court changed the route from the power pole to the side of the new Blue Bay building. Generally, a trial court has no authority to change the location of an easement. *See Kave*, 198 Wn. App. at 820-21. But Zonnebloem and Mandl do not assign error to or present any argument concerning the trial court's prescriptive easement route, possibly because they would prefer that any new lines run directly to the Blue Bay building. Therefore, we do not address this issue.

[7] This "finding of fact" actually was a conclusion of law and we must treat it as a legal conclusion regardless of what the trial court called it. *See Henry-Levingston*, 196 Wn. App. at 697.

4. Analysis

a. No Permission at Inception

Initially, there is no evidence that Zonnebloem's and Mandl's predecessors gave permission to Blue Bay's predecessors when the power and cable lines were first run over their property. The trial court found that the power line had been present since before the Sluys purchased the Mandl property, and neither party presented evidence about the circumstances surrounding the first installation of the power line. Therefore, Zonnebloem and Mandl were not entitled to a finding of permissive use based on permission at the inception of the use.

b. No Presumption of Permissive Use

The next question is whether this case presents a scenario allowing a presumption of permissive use. Zonnebloem and Mandl's primary argument is that the second presumption scenario, when it is reasonable to infer that the use of land was permitted by neighborly sufferance or acquiescence, applies here.[8] *Gamboa*, 183 Wn.2d at 44. We must decide whether there was sufficient evidence to apply the presumption.

The Supreme Court in *Gamboa* described the neighborly sufferance standard as a "fairly low bar." *Id.* at 51. A presumption of permissive use in such situations also furthers policy concerns:

---

[8] Zonnebloem and Mandl argue that the other two factual scenarios should apply as well. We disagree. The first exception for unenclosed land does not necessarily apply to parcels of land that lack a fence, but rather applies when a parcel is " 'vacant, open, unenclosed, [or] unimproved.' " *McMilian v. King County*, 161 Wn. App. 581, 601, 255 P.3d 739 (2011) (quoting *Sharp v. Kieszling*, 35 Wn.2d 620, 623, 214 P.2d 163 (1950)). Therefore, this exception does not apply to a paved parking lot in a developed area. The third exception for roads created and used by a landowner also does not apply because there is no evidence either way who installed the electric and cable lines.

19

> "The law should, and does[,] encourage acts of neighborly courtesy; a landowner *who quietly acquiesces* in the use of a path, or road, across his uncultivated land, resulting in no injury to him, but in great convenience to his neighbor, ought not to be held to have thereby lost his rights."

*Id.* at 48 (alteration and emphasis in original) (quoting *Roediger*, 26 Wn.2d at 709). This policy helps incentivize friendly and neighborly cooperation and avoids requiring landowners to have an antagonistic attitude in order to protect their property rights. *Gamboa*, 183 Wn.2d at 48-49.

Regarding the Zonnebloem parking lot, there is no evidence in the record that at the time the lines were installed the same person owned both the parking lot and the Mandl property, as the Sluys later did. This means that both Blue Bay's predecessors and Mandl's predecessors encroached on the parking lot property, and there is no indication that the parking lot owner used the encroaching lines or benefitted from them. As a result, there can be no inference that the owner of the parking lot allowed Blue Bay's predecessors to use the route for the line through neighborly acquiescence.

Regarding the Mandl property, the record again does not show the circumstances surrounding the line's installation to a strike on the Mandl building. Mandl's predecessors may have knowingly allowed Blue Bay's use as a good neighbor. But the power company also may have installed the wire that way as a matter of convenience without consulting Mandl's predecessors. In the absence of any evidence, the record does not support an inference that Blue Bay was using the power and cable lines through the neighborly acquiescence of Mandl's predecessors.

c.    Inference of Adverse Use and Other Evidence

The ultimate question is whether there is substantial evidence to support the trial court's implied finding that use of the power and cable lines by Blue Bay's predecessors was adverse.

20

Because no presumption of permissive use applies, we can infer adverse use based on the undisputed fact that Blue Bay's predecessors satisfied the remaining elements of a prescriptive easement claim by using the power and cable lines for 10 continuous years. *Cuillier*, 57 Wn.2d at 627. And an inference is sufficient to constitute substantial evidence, particularly in the absence of any contrary evidence. *See Columbia State Bank*, 199 Wn. App. at 319 (noting that prevailing party below is entitled to all reasonable inferences). Therefore, the inference that Blue Bay's use was adverse provides substantial evidence to support a finding of adverse use.

d.   Summary

Viewing the evidence and reasonable inferences in a light most favorable to Blue Bay, we hold that the trial court's implied factual finding that the use by Blue Bay's predecessors of the power and cable lines was adverse was supported by substantial evidence. Accordingly, we hold that the trial court did not err in concluding that Blue Bay was entitled to a prescriptive easement regarding the route of the power and cable lines.

C.   ADVERSE POSSESSION OF AREA #3

Blue Bay argues that the trial court erred in concluding that title of Area #3 should be quieted in Mandl based on adverse possession. Blue Bay claims that substantial evidence did not support the trial court's findings of fact regarding the elements of adverse possession and that those findings did not support the court's conclusion that Mandl adversely possessed the entirety of Area #3. We disagree.

1.   Legal Principles

To establish adverse possession of a parcel of land, a claimant is required to demonstrate by a preponderance of the evidence that the possession was (1) exclusive, (2) actual and

uninterrupted, (3) open and notorious, and (4) hostile. *Nickell v. Southview Homeowners Ass'n*, 167 Wn. App. 42, 50, 271 P.3d 973 (2012). Each element must have existed for a period of 10 years. *Id.*

Possession is open and notorious if either the title owner had actual notice of the adverse use or if the claimant used the land in a manner that would make a reasonable person believe the claimant owned it. *Id.* The nature and location of the land in question are relevant to the claimant's type of use. *Shelton v. Strickland*, 106 Wn. App. 45, 50, 21 P.3d 1179 (2001). For possession to be exclusive, the claimant must possess the parcel as an owner would. *Crites v. Koch*, 49 Wn. App. 171, 174, 741 P.2d 1005 (1987). An occasional, transitory use by the true owner usually will not prevent adverse possession if the claimant permits the use as a "neighborly courtesy." *Id.* at 175-76. Possession is hostile if the claimant treats the land as his own throughout the period, without regard to subjective intent. *Chaplin v. Sanders*, 100 Wn.2d 853, 860-61, 676 P.2d 431 (1984).

When establishing the boundary of an adversely possessed parcel, the trial court need not find a clearly etched line, but rather may project one between objects where reasonable and logical to believe the claimant's use of the land was open and notorious. *Riley v. Andres*, 107 Wn. App. 391, 396, 27 P.3d 618 (2001). This demarcation may include ground around areas where direct evidence shows actual possession when reasonably necessary to settle a boundary dispute. *Lloyd v. Montecucco*, 83 Wn. App. 846, 853-54, 924 P.2d 927 (1996).

2.    Trial Court's Findings

The trial court made several findings of fact relevant to the parties' use of Area #3:

A.  In Area #3, the wall of the Mandl Building, space directly adjacent to it, and a retaining wall, encroach over the surveyed property line.

  B. The evidence showed that Area #3 had been used and maintained by the Sluys for a long time. Mandl maintained it – including the removal of a plum tree in Area #3.

  C. In its former configuration a pathway existed from the roof of the Mandl Building to the Parking Lot. This pathway consisted of a footbridge and was in Area #3. It went next to the garage on the Mandl property. The bridge and pathway were maintained by Mandl and its predecessors in excess of ten years. . . .

  D. Blue Bay presented no testimony to rebut the testimony . . . that [these] areas [were] used exclusively by Mandl for over ten years.

  E. Blue Bay has no feasible access to Area #3. It admitted that the Mandl Building and retaining wall in Area #3 have been adversely possessed.

  F. Mandl has shown by clear and convincing evidence that it and its predecessors have occupied this area exclusively, openly, notoriously, continuously under a claim of right for over ten years.

CP at 461. The trial court concluded that "Mandl and its predecessors have proven by clear and convincing evidence that its, and its predecessors' use of Area[] #3 . . . was actual, open and notorious, hostile, continuous and exclusive" and that title to Area #3 would be quieted in Mandl. CP at 466.

  3. Analysis

  Trial testimony provided substantial evidence to support the trial court's findings of fact, which in turn supported the court's legal conclusion. There was evidence that Marion Sluys and Mandl's employees maintained Area # 3 on a consistent basis for more than 10 years. Even though the maintenance did not occur year-round, it was continuous in that it occurred when necessary, i.e. during the summer. Considering the type of land at issue – a steep slope that was otherwise unusable – Mandl's maintenance is the type of use consistent with ownership and

23

hostile to Blue Bay's title. In addition, there was testimony that a footbridge from the Mandl building crossed Area #3.

Blue Bay argues that Mandl's use was not exclusive. The declarations of Blue Bay's predecessors vaguely indicated that they also took part in the area's upkeep. However, occasional use by a true owner is not fatal to adverse possession. *Koch*, 49 Wn. App. at 174. Testimony that Mandl employees regularly maintained the area in the summer suggests that any maintenance by the true landowners was limited. The location of the area, which could not be reached directly from the Blue Bay building, also supports a conclusion that Mandl was primarily responsible for the area's maintenance.

Blue Bay also argues that trial testimony did not identify which portions of Area #3 Mandl used. But Marion Sluys and Mattson, Mandl's renter, testified that the footbridge crossed Area #3. Further, photographs of the area show that it was largely covered in vegetation. Mandl's witnesses testified that Mandl and its employees controlled any growth when necessary. This evidence would allow a rational person to conclude that Mandl had exercised possession of the entirety of Area #3. And in a case like this, where the record leaves substantial gaps because witness testimony involved significant gesturing and pointing to pictures and maps, the trial court is in the best position to resolve issues of witness credibility, conflicting testimony, and persuasiveness of the evidence. *See Harris v. Urell*, 133 Wn. App. 130, 139, 135 P.3d 530 (2006) (noting the appropriateness of such deference).

We hold that substantial evidence supports the trial court's findings of fact and that these findings support the trial court's conclusion that Mandl adversely possessed the entirety of Area #3. Therefore, we affirm the trial court on this issue.

D.     ATTORNEY FEES ON APPEAL

Both parties request reasonable attorney fees under RCW 7.28.083.  RCW 7.28.083 provides that we may award all or a portion of costs and reasonable attorney fees to the prevailing party in an action asserting title to real property by adverse possession "if, after considering all the facts, the court determines such an award is equitable and just."

Blue Bay argues that RCW 7.28.083 applies to prescriptive easement claims, and that it is entitled to an attorney fee award as the prevailing party on its prescriptive easement claims. Mandl argues that it is entitled to attorney fees as the prevailing party on its Area #3 adverse possession claim.  However, because we conclude that neither party substantially prevailed on this appeal, we exercise our discretion and decline to award attorney fees to either party.

CONCLUSION

We affirm the trial court's conclusion that Blue Bay was entitled to a prescriptive easement regarding the power and cable lines and that Mandl obtained Area #3 through adverse possession.

_____
MAXA, A.C.J.


We concur:


_____
LEE, J.

_____
SUTTON, J.

25