IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| HARLAN D. DOUGLASS and MAXINE H. DOUGLASS, husband and wife, | ) ) ) | No. 33615-8-III |
| Appellants, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| SHAMROCK PAVING, INC., a Washington corporation, | ) ) ) ) | |
| Respondent. | ) | |

PENNELL, J. — The Model Toxics Control Act (MTCA), chapters 70.105D, 82.21

RCW, provides a statutory framework for recovery of hazardous waste remediation costs.

Shamrock Paving Inc. admittedly discharged petroleum, a statutorily-defined hazardous

substance, onto the Douglasses' property. Nevertheless, Shamrock denies responsibility for costs because the quantities released were too small to pose a potential threat to human health or the environment.

Shamrock's position is factually accurate and legally significant, but it is not dispositive. Our disagreement with Shamrock lies in the scope of what constitutes remedial action under the MTCA. By the statute's plain terms, remedial action includes not only site cleanup but also investigative efforts undertaken to identify the need for cleanup. When the Douglasses incurred costs in order to identify the extent of Shamrock's contamination, they engaged in compensable remedial action. Although the subsequent cleanup efforts could fairly be characterized as nonremedial, given the low level of contamination found, the Douglasses were nevertheless entitled to prevailing party status and an award of reasonable costs and attorney fees. The trial court's judgment in favor of Shamrock is therefore reversed.

## FACTS[1]

Harlan and Maxine Douglass own real property in Spokane, Washington. During the summer of 2013, Shamrock used the property, without permission, as a staging area

---

[1] Many of these facts are taken from unchallenged factual findings made by the trial court. Unchallenged findings of fact become verities on appeal. *Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980).

2

for a paving project. While at the site, Shamrock frequently fueled equipment and sprayed diesel fuel as a cleaner. Shamrock also stored piles of asphalt grindings,[2] cold mix,[3] and paper joints[4] on the property; all of these materials contained petroleum.

After discovering Shamrock's unauthorized use of their property, the Douglasses instructed Shamrock to vacate. Shamrock complied and took steps to restore the property to its original condition. But the Douglasses were not satisfied. Concerned Shamrock had disposed hazardous substances, the Douglasses hired a company named Tetra Tech to conduct soil testing.

Tetra Tech first tested the soil in November 2013. The lone sample collected at that time revealed the presence of lube oil at a concentration of 2,000 mg/kg. Additional testing occurred the following January. This time two soil samples were taken. The first contained lube oil at 400 mg/kg, and the second contained 800 mg/kg. After receiving this second set of results, the Douglasses chose to clean their property by removing and disposing of 68 tons of soil. Postremoval, Tetra Tech took two final samples. The first

---

[2] A piece of machinery chews up the existing road to create grindings. Those grindings are then used in repaving the road.

[3] Cold mix is used to patch potholes.

[4] A paper joint is a temporary joint. Paper is placed downstream of the joint directly onto the existing pavement surface. The paper is used because the asphalt mix does not stick to it. Paper joints assist vehicles in navigating drops between old and new asphalt.

showed lube oil at 220 mg/kg and the second showed lube oil at less than 100 mg/kg.

The Douglasses sued Shamrock for trespass and nuisance and filed a claim under the MTCA for recovery of remedial action costs. At trial, the Tetra Tech expert testified that after obtaining the first soil test results, he provided the Douglasses with three recommendations: take no action, remove a significant amount of soil, or do additional testing. The Douglasses chose to conduct additional surface soil testing. After the additional testing, the expert made the same three recommendations. This time the Douglasses opted to remove the soil.

Shamrock's expert testified that the Douglasses' soil test results were below the cleanup levels established by the Department of Ecology (Department). This meant there was neither an obligation to report the release to the Department nor was it required—or even common—to conduct any cleanup. Shamrock's expert explicitly stated he did not consider the concentrations found on the property to be a threat or potential threat to human health or the environment.

A jury returned a verdict in favor of the Douglasses' claims for trespass and nuisance and awarded them $17,300.00. The court heard the Douglasses' MTCA claim. Despite finding Shamrock contributed to the release of hazardous substances and was thus liable under the MTCA, the court did not order payment of remedial costs. The court

4

reasoned the precleanup concentrations of petroleum on the Douglasses' property were too insignificant to constitute a threat or potential threat to human health or the environment. The court awarded attorney fees and costs to Shamrock, the prevailing party, in the amount of $97,263.13. The Douglasses appeal.

## ANALYSIS

*The MTCA provides a private cause of action to recover remedial costs*

The purpose of the MTCA is to facilitate the cleanup of contaminated lands and promote a healthful environment for future generations. *Seattle City Light v. Dep't of Transp.*, 98 Wn. App. 165, 169, 989 P.2d 1164 (1999). Under the MTCA, a person who incurs costs remediating a hazardous waste site may bring a private claim for financial recovery.

Proof of a MTCA remediation claim involves the following elements: (1) the requesting party is financially responsible for remediation costs at a facility, (2) the respondent was liable for a release or threatened release of hazardous substances at the facility under RCW 70.105D.040, (3) remedial action was taken to address the release of hazardous substances, and (4) the remedial action was the substantial equivalent of actions that would have been taken by the Department. RCW 70.105D.080; *Seattle City Light*, 98 Wn. App. at 175.

No. 33615-8-III
*Douglass v. Shamrock Paving, Inc.*

Once a party establishes a right of recovery, the damage amount turns on equitable factors to be determined by the trial court. RCW 70.105D.080. "A liable party 'may be required to pay complete response costs, or may not be required to pay any response costs, or may be required to pay some intermediate amount,' depending on the court's equitable assessments." *Seattle City Light*, 98 Wn. App. at 175 (quoting *Akzo Coatings, Inc. v. Aigner Corp.*, 909 F. Supp. 1154 (N.D. Ind. 1995)).

*The Douglasses engaged in remedial action, justifying an award of costs*

As owners, the Douglasses are responsible for remediation costs at their property. By releasing petroleum products at the site, Shamrock is liable for releasing a hazardous substance.[5] And the trial court made an undisputed finding that the actions taken by the Douglasses at their property were substantially equivalent to actions that would have been taken by the Department.[6] The only disputed element of the Douglasses' MTCA

---

[5] Petroleum products are classified as a hazardous substance. RCW 70.105D.020(13)(d).

[6] While the trial court did not separate investigative from cleanup efforts, the evidence is undisputed that the steps taken by Tetra Tech to investigate the Douglasses' soil was substantially equivalent to what the Department would have done. The Department expert described an initial investigation as reviewing the site, maps, and sample results. The Tetra Tech expert described engaging in substantially the same process. *See* WAC 173-340-545 (whether a private remedial action is the substantial equivalent of a department conducted action is determined according to "overall effectiveness");*see also Taliesen Corp. v. Razore Land Co.*, 135 Wn. App. 106, 123, 144 P.3d 1185 (2006).

6

contribution claim is whether they engaged in "remedial action" as required by the statute.

At its heart, this case is about the scope of what constitutes remedial action under the MTCA. Shamrock contends remedial action applies only to measures taken to address hazardous waste contamination that actually poses a threat to human health or the environment. The Douglasses take a broader view. Under their construction, remedial action also encompasses steps taken to assess whether a hazardous waste discharge poses a threat. Resolving the parties' dispute involves legal questions reviewed de novo. *Williams v. Tilaye*, 174 Wn.2d 57, 61, 272 P.3d 235 (2012). Our analysis requires us to assess the statute's plain language with a view toward giving effect to its purpose. *Pac. Topsoils, Inc. v. Dep't of Ecology*, 157 Wn. App. 629, 641, 238 P.3d 1201 (2010).

The MTCA defines a "remedial action" as

> *any action or expenditure* consistent with the purposes of this chapter *to identify*, eliminate, or minimize *any* threat or *potential threat posed by hazardous substances* to human health or the environment *including any investigative* and monitoring *activities* with respect to any release or threatened release of a hazardous substance and any health assessments or health effects studies conducted in order to determine the risk or potential risk to human health.

RCW 70.105D.020(33) (emphasis added). This is a broadly-worded provision. *Pac. Sound Res. v. Burlington N. Santa Fe Ry. Corp.*, 130 Wn. App. 926, 936, 125 P.3d 981 (2005). By its plain terms, it is not limited to actual cleanup efforts. Actions taken to

7

identify and investigate the need for cleanup are also covered. Furthermore, contrary to Shamrock's position, an investigation need not reveal an actual threat to qualify as remedial. Thankfully, not all potential threats turn out to be dangerous. By extending the remedial action definition to include the identification and investigation of potential threats, the MTCA covers actions and expenditures taken to discern whether a potential threat in fact poses a danger to human health or the environment.

This broad interpretation of "remedial action" aligns with the liberal construction afforded to the MTCA. *See* RCW 70.105D.910; RCW 70.105D.010. Allowing parties to recover the costs of investigating any potentially hazardous release, even if the release turns out to be harmless, encourages good stewardship and promotes preservation of the environment.[7]

Our interpretation of "remedial action" is not at odds with our prior decision in *Seattle City Light*, 98 Wn. App. at 176. *Seattle City Light* only addressed a request for

---

[7] Our interpretation is also consistent with similar language in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601, which has been held to provide persuasive authority in interpreting the MTCA. *See Seattle City Light*, 98 Wn. App. at 169-70. Under CERCLA, recoverable response costs include investigatory costs. *Bd. Of County Comm'rs v. Brown Grp. Retail, Inc.*, 768 F. Supp. 2d 1092 (D. Colo. 2012). While CERCLA requires response costs be "necessary," the MTCA does not. It can thus be inferred that intended recovery for "remedial actions" under the MTCA can be broader than under CERCLA.

cleanup costs. It did not consider a claim for investigative costs. The *Seattle City Light* rule that a defendant is not liable for cleanup costs absent proof of a potential threat to human health or the environment is consistent with the rule recognized here: that investigative costs, undertaken to discern whether such a threat exists, are compensable.

The steps taken by the Douglasses to test their soil for hazardous waste contamination were remedial under the MTCA. This is not a case where the amount of hazardous waste released onto the property was so clearly de minimis that no action was needed to ensure lack of danger.[8] Shamrock had been releasing petroleum products onto the Douglasses' soil for approximately three months. According to the trial court's findings, the amount of substances released was unknown. These circumstances justified an investigation.

*The Douglasses' cost award turns on undetermined equitable factors*

While the Douglasses are entitled to remedial action costs, their exact recovery amount is not something that can be resolved on appeal. Instead, the matter must be remanded for an assessment of equitable factors. RCW 70.105D.080. Relevant to the

---

[8] We therefore reject Shamrock's concern that any contamination, no matter how small, could result in cost recovery under the MTCA. If, for example, someone working for Shamrock had merely slopped a small amount of engine oil onto the Douglasses' land, soil testing would not have been warranted to rule out the risk of harm. Recovery under that scenario would be unwarranted.

9

equitable issues on remand is the extent to which the Douglasses' actions qualify as remedial. *See Seattle City Light*, 98 Wn. App. at 175. The expenditure of time and resources on nonremedial activities is a negative equity, weighing against a request for contribution.

After trial, the court determined the Douglasses' cleanup (as opposed to investigative) efforts were not remedial because their property was not sufficiently contaminated to pose a threat or potential threat to human health or the environment. The Douglasses challenge this assessment. Because the trial court's finding is relevant to the issues on remand, resolution of the Douglasses' complaints is warranted. The standard we utilize is quite deferential. The trial court's factual findings are reviewed for substantial evidence and its conclusions of law are reviewed to determine if they are supported by the findings of fact. *Imrie v. Kelley*, 160 Wn. App. 1, 6-7, 250 P.3d 1045 (2010).

To be remedial, a cleanup effort must address a hazardous substance posing a threat or potential threat to human health or the environment. Ample evidence supports the trial court's conclusion that the Douglasses' property was not sufficiently contaminated to meet this standard. Even according to the Douglasses' own expert from Tetra Tech, the levels of contaminants found in the Douglasses' soil might not necessitate

cleanup. Shamrock's expert was more direct. According to his testimony, even at the highest level of detected contamination, cleanup was not necessary as there was no threat or potential threat to human health or the environment. The trial court was entitled to find the defense expert credible.

Contrary to the Douglasses' claim, the trial court's findings were not based on confusion over whether a potential hazard could exist, despite the lack of any identified contamination exceeding the Department's cleanup levels.[9] The Douglasses correctly point out our case law does not condition responsibility for remedial action costs on a minimum level of toxicity. *Seattle City Light*, 98 Wn. App. at 172. However, the trial court does not appear to have been confused on this point. Rather than deferring to a toxicity litmus test, the trial court relied on the totality of the evidence to conclude the levels of contaminants found in the Douglasses' soil prior to cleanup[10] did not raise potential hazards for human health or the environment.

---

[9] 2,000 mg/kg is the minimum cleanup level for lube oil identified by the Department regulations. WAC 173-340-740(2)(b)(i); WAC 173-340-900.

[10] We disagree with the Douglasses' claim that the trial court misunderstood the testimony from the Department witness. The issue at trial was whether contaminants in the Douglass property's soil posed a potential hazard in its precleanup state. The Department witness had reviewed Tetra Tech's report documenting the precleanup test results. Thus, it was reasonable for the court to understand the witness's comments to pertain to the property's precleanup state.

11

The evidence at trial provided an adequate basis to conclude the Douglasses' property did not require remedial cleanup. Accordingly, funds spent on the cleanup (as opposed to funds spent on investigation) did not qualify as remedial action costs under the MTCA. This circumstance is a factor the trial court may consider as part of its equitable assessment on remand.

*Attorney fees*

Because the Douglasses have established the elements of a contribution claim under RCW 70.105D.080, they are entitled to prevailing party status and to reasonable attorney fees and costs, including fees on appeal. *Taliesen Corp. v. Razore Land Co.*, 135 Wn. App. 106, 141, P.3d 1185 (2006).[11] We remand this matter to the trial court for an award of total fees and costs, including appellate fees and costs. In determining costs, the trial court shall utilize the lodestar method and shall consider the amount of time reasonably expended on the Douglasses' successful claims at a reasonable hourly rate. *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007).

## CONCLUSION

The trial court's judgment in favor of Shamrock Paving and related award of

---

[11] As explained in *Taliesen*, neither the net affirmative judgment rule nor a proportionality approach are applicable in this context. *Taliesen*, 135 Wn. App at 142-43.

12

No. 33615-8-III
*Douglass v. Shamrock Paving, Inc.*

attorney fees is reversed. This matter is remanded to the trial court for further

proceedings consistent with this opinion.

_____
Pennell, J.

WE CONCUR:

_____          _____
Korsmo, J.                                Lawrence-Berrey, A.C.J.

13