

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE DEC 2 1 2017

Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Dec 21, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| HARLAN D. DOUGLASS and MAXINE H. DOUGLASS, husband and wife, | ) ) ) ) | No. 94087-8 |
| Respondents, | ) ) | |
| v. | ) ) | EN BANC |
| SHAMROCK PAVING, INC., a Washington corporation, | ) ) ) | FILED ___DEC 2 1 2017___ |
| Petitioner. | ) ) ) | |

FAIRHURST, C.J.—Landowners Harlan and Maxine Douglass (Douglass)

brought a private right of action against Shamrock Paving Inc. under the Model

Toxics Control Act (MTCA), chapter 70.105D RCW, to recover costs incurred from

an alleged remedial action. Shamrock trespassed onto Douglass' vacant property and

spilled unknown amounts of lube oil. Douglass paid for soil testing and soil removal

to clean up his property and now seeks recovery of those costs under the MTCA. At

issue is the interpretation of "remedial action" within the statute, whether the lube

oil on Douglass' property created a "potential threat" to human health or the environment, and which party is entitled to prevailing party status for purposes of awarding attorney fees. RCW 70.105D.020(33), .080. We affirm the Court of Appeals' holding that Douglass' soil testing was a remedial action but his soil removal was not. We reverse the Court of Appeals' prevailing party designation because it was made prematurely. We remand the case to the trial court.

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual background

Shamrock fueled its equipment, cleaned its machines, and stored its materials on Douglass' property while carrying out a paving project for the Washington State Department of Transportation. Based on these activities, the trial court found that Shamrock spilled unknown amounts of lube oil onto the property. Lube oil is a heavy oil (petroleum product) that is a "hazardous substance." RCW 70.105D.020(13)(d). After Shamrock's activities ceased, Douglass hired Tetra Tech Inc., an environmental consulting firm, to investigate the contamination on his property. Tetra Tech took three separate samples, measuring lube oil at 2,000 mg/kg, 800 mg/kg, and 400 mg/kg. After reviewing the samples, Douglass ordered Tetra Tech to perform a cleanup operation, removing 68 tons of soil from the property. After the cleanup, Tetra Tech took two additional samples, measuring lube oil at 220 mg/kg and at less than 100 mg/kg.

2

B.     Procedural history

Douglass initially sued Shamrock for trespass and nuisance. After testing the soil, Douglass amended the complaint to add a private right of action claim under the MTCA. The issues were bifurcated. A jury heard the trespass and nuisance claims and returned a verdict in favor of Douglass. The jury denied Douglass' request for cleanup costs. The judge heard the MTCA claim and found Shamrock had contributed to the release of hazardous substances, but denied Douglass' private right of action because Douglass failed to prove that the lube oil was a threat to human health or the environment. The judge designated Shamrock as the prevailing party pursuant to the MTCA and awarded attorney fees.

Douglass appealed, and the Court of Appeals reversed. *Douglass v. Shamrock Paving, Inc.*, 196 Wn. App. 849, 384 P.3d 673 (2016). The Court of Appeals focused on whether Douglass conducted a "remedial action" and ultimately concluded that the soil testing (investigation) was a "remedial action" based on the statutory definition but the soil removal (cleanup) was not. *Id.* at 860. The court relied on the MTCA's plain language, finding that "remedial action" includes "actions and expenditures taken to discern whether a potential threat in fact poses a danger to human health or the environment." *Id.* at 857. The court distinguished Division Two's prior interpretation of "remedial action" because that case considered only cleanup costs, not investigative costs. *Id.* at 857-58 (referring to *Seattle City Light v.*

3

*Dep't of Transp.*, 98 Wn. App. 165, 989 P.2d 1164 (1999)). Regarding Douglass'

cleanup costs, the Court of Appeals explained that "a cleanup effort must address a

hazardous substance posing a threat or potential threat to human health or the

environment." *Id.* at 859. The court deferred to the trial court's conclusion that the

lube oil contamination did not meet this standard; thus, no recovery for cleanup costs

was warranted. *Id.* Since Douglass established the elements of his MTCA claim for

investigative costs, the Court of Appeals designated him the prevailing party entitled

to recover attorney fees. *Id.* at 860. The court then remanded the case to the trial

court to complete an assessment of equitable factors to determine the exact recovery

amount. *Id.* at 858.

Shamrock sought review of the Court of Appeals' decision. Douglass filed an

answer asking the court to deny Shamrock's petition and filed a cross petition for

review of the cleanup cost recovery. We granted review of both petitions. *Douglass*

*v. Shamrock Paving, Inc.*, 188 Wn.2d 1020, 399 P.3d 1105 (2017).

## II. ISSUES

A.    When lube oil contamination meets but does not exceed the Department

of Ecology's (Ecology) cleanup level, can a party recover the cost of investigative

activities as remedial action costs under MTCA's private right of action?

B.    Does lube oil contamination that meets but does not exceed Ecology's

cleanup level pose a potential threat to human health or the environment?

C.    Under the MTCA, is a party who recovers remedial action costs the prevailing party, entitled to attorney fees, including costs on appeal?

### III. ANALYSIS

The MTCA provides a private right of action to recover remedial action costs (also referred to as a contribution claim). RCW 70.105D.080. The statutory claim provides that (a) "[r]ecovery of remedial action costs shall be limited to those remedial actions that, when evaluated as a whole, are the substantial equivalent of a department-conducted or department-supervised remedial action," (b) remedial action costs "shall include reasonable attorneys' fees and expenses," (c) the judge determines the recovery award "based on such equitable factors as the court determines are appropriate," and (d) "[t]he prevailing party in such an action shall recover its reasonable attorneys' fees and costs." *Id.* "Remedial action" is defined as

> any action or expenditure consistent with the purposes of this chapter to identify, eliminate, or minimize any threat or potential threat posed by hazardous substances to human health or the environment including any investigative and monitoring activities with respect to any release or threatened release of a hazardous substance and any health assessments or health effects studies conducted in order to determine the risk or potential risk to human health.

RCW 70.105D.020(33).

This case requires us to interpret both provisions, along with Ecology's corresponding regulations. Statutory interpretation is a question of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4

(2002) (citing *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001); *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). When ascertaining the plain meaning, the court considers the ordinary meaning of words, basic rules of grammar, and statutory context. *Citizens All. for Prop. Rights Legal Fund v. San Juan County*, 184 Wn.2d 428, 435, 359 P.3d 753 (2015) (citing *In re Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wn.2d 834, 838-39, 215 P.3d 166 (2009)). If the meaning of the statute is plain on its face, the court must give it effect. *Campbell & Gwinn*, 146 Wn.2d at 9-10. However, if the statute remains susceptible to multiple meanings, it is appropriate for the court to resort to aids to construction, including legislative history. *Id.* at 12 (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001); *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994)).

Based on our interpretation, we affirm the Court of Appeals in part and reverse in part. We affirm the Court of Appeals' decision that Douglass' investigative costs are recoverable remedial action costs but his cleanup costs are not. We reverse the Court of Appeals' designation of Douglass as the prevailing party because that designation was premature.

A. "Remedial action" includes investigative activities of hazardous substances, but recovery of those costs may be limited

    1. *The plain meaning of "remedial action" includes investigative activities*

The plain meaning of "remedial action" can be ascertained through the ordinary meaning of words and basic rules of grammar. The MTCA is "to be liberally construed," RCW 70.105D.910, yet the court will not put forth strained interpretations, *Bird-Johnson Corp. v. Dana Corp.*, 119 Wn.2d 423, 427, 833 P.2d 375 (1992) (citing *Draper Mach. Works, Inc. v. Dep't of Nat. Res.*, 117 Wn.2d 306, 315, 815 P.2d 770 (1991)). The first clause of the "remedial action" definition provides the operative meaning: "any action . . . to identify, eliminate, or minimize any threat or potential threat posed by hazardous substances to human health or the environment." RCW 70.105D.020(33). The second clause begins with "including," which is generally construed as a term of enlargement, not limitation. *Id.*; *see Queets Band of Indians v. State*, 102 Wn.2d 1, 4, 682 P.2d 909 (1984). Specifically, the second clause enlarges the definition of "remedial action" to *include* "any investigative and monitoring activities with respect to any release or threatened release of a hazardous substance and any health assessments or health effects studies conducted in order to determine the risk or potential risk to human health." RCW 70.105D.020(33).

The Court of Appeals correctly interpreted the term "remedial action." "Remedial action" includes investigative activities because it is plainly stated within the definition—"remedial action" means "any action . . . including any investigative and monitoring activities." *Id.* Shamrock agrees that investigative activities are remedial actions, but only under limited circumstances. Shamrock argues that the Court of Appeals effectively added words to the statutory definition of "remedial action" so that it includes actions "to identify [whether] . . . any threat or potential threat posed by hazardous substances [exists]." *Id.*; Pet. for Review at 14. But Shamrock's proposed interpretation is subject to the same alleged defect. Shamrock asserts that "'remedial action' means actions that *result in the identification of* a threat or potential threat." Pet. for Review at 10. This assertion adds words to the statute because the definition makes no reference to the *result* of an investigation.

Douglass agrees with the Court of Appeals' interpretation that remedial action includes investigative activities. Suppl. Br. of Resp'ts at 8. The Court of Appeals correctly interpreted the plain meaning of "remedial action" to include investigative activities because the legislature explicitly described those identifying activities as "investigati[ons] . . . with respect to any release or threatened release of a hazardous substance." RCW 70.105D.020(33). The investigations concern *any* release of a hazardous substance, not a specified quantity that exceeds the cleanup level. Ecology, in its amicus brief, agrees that the outcome of the investigation is not

dispositive. Amicus Curiae Br. of Ecology at 7. Based on the plain meaning of the statute, investigations of hazardous substances are remedial actions because their purpose is to "discern whether such a threat exists." *Douglass*, 196 Wn. App. at 858. Douglass' soil testing was a remedial action under the MTCA because its purpose was to investigate the release of lube oil.

### 2. *Remedial action costs are not automatically recovered*

The Court of Appeals correctly refrained from making a final determination of Douglass' recovery amount because the case needed to be "remanded for an assessment of equitable factors." *Id.* Shamrock is not automatically liable for remedial action costs. Nonetheless, Shamrock argues that the Court of Appeals' interpretation imposes a strict liability standard, forcing it to pay for investigatory activities without establishing a minimum level of harm or culpability. Suppl. Br. of Pet'r at 13-14. Shamrock's argument is based on a misinterpretation of the statute.

The MTCA imposes limitations on the recovery of remedial action costs. Contrary to Shamrock's concerns, no provision provides automatic recovery of any and all costs spent on remedial actions. Recovery is limited to remedial action costs that are the substantial equivalent of Ecology's remedial actions. Ecology is empowered to "[i]nvestigate . . . any releases or threatened releases of hazardous substances, including but not limited to inspecting, sampling, or testing to determine the nature or extent of any release or threatened release." RCW 70.105D.030(1)(a).

9

"If there is a reasonable basis to believe that a release or threatened release of a hazardous substance may exist, the department's authorized employees, agents, or contractors may enter upon any property and conduct investigations." *Id.* Through its regulations, Ecology provides the steps for a typical cleanup process. First, a release of hazardous substances is reported to Ecology. WAC 173-340-120(2)(a). Next, Ecology conducts an initial investigation. WAC 173-340-120(2)(b). An "initial investigation" is "an inspection of a suspected site by the department and documentation of conditions observed during that site inspection." WAC 173-340-310(1). Douglass' investigation was substantially equivalent to Ecology's initial investigation, and the record supports the fact that there was a reasonable basis to believe that a release of hazardous substances occurred because of Shamrock's trespassory activities on the property.

After the remedial action costs are defined, the judge determines the actual recovery award based on "such equitable factors as the court determines are appropriate." RCW 70.105D.080; *see, e.g., PacifiCorp. Envtl. Remediation Co. v. Dep't of Transp.*, 162 Wn. App. 627, 666, 259 P.3d 1115 (2011) (affirming the trial court's equitable assessment); *Dash Point Vill. Assocs. v. Exxon Corp.*, 86 Wn. App. 596, 607, 937 P.2d 1148, 971 P.2d 57 (1997) (affirming the trial court's equitable assessment). If Shamrock had spilled one drop of lube oil and Douglass paid for an investigation of his entire property, the recovery may be little to none. In *Seattle City*

*Light*, the court explained the possible outcomes depending on the equitable assessment—the liable party may have to pay for all remedial action costs, some costs, or none at all. 98 Wn. App. at 175. This equitable assessment prevents absurd or unfair results.

B.     Compliance with cleanup levels protects, rather than threatens, human health and the environment

Douglass argues that the Court of Appeals wrongly denied his remedial action costs incurred through cleanup operations. To recover, Douglass must prove that the hazardous substance poses a threat or potential threat to human health or the environment. RCW 70.105D.020(33); *Seattle City Light*, 98 Wn. App. at 170. Douglass does not dispute this standard. Instead, Douglass argues that lube oil contamination of 2,000 mg/kg is a potential threat to human health or the environment. Suppl. Br. of Resp'ts at 10.

The MTCA instructs Ecology to maintain "minimum clean-up standards for remedial actions." RCW 70.105D.030(2)(e). Ecology defines "cleanup level" as the "concentration of a hazardous substance . . . that is determined to be *protective* of human health and the environment." WAC 173-340-200 (emphasis added). The soil cleanup level for lube oil on unrestricted properties is 2,000 mg/kg. WAC 173-340-900, tbl.740-1. The cleanup level provides a conservative metric such that exceeding 2,000 mg/kg "do[es] not necessarily mean the soil must be restored to these levels." WAC 173-340-900, tbl.740-1, n.a. Conversely, Ecology may require a more

11

stringent cleanup level (less than 2,000 mg/kg) "when[,] based on a site-specific evaluation, [Ecology] determines that such levels are necessary to protect human health and the environment." WAC 173-340-704(3). Because Ecology never performed a site-specific evaluation of Douglass' property, this case does not present that situation. Without Ecology's evaluation, it is appropriate to apply the published cleanup levels to Douglass' property.[1] When Douglass elected to perform the cleanup, the lube oil contamination ranged from 400-2,000 mg/kg, which, according to Ecology's published cleanup levels, is "protective of human health and the environment." WAC 173-340-200; WAC 173-340-900, tbl.740-1. The trial court and Court of Appeals correctly concluded that no potential threat existed. There was no threat to eliminate or minimize and, thus, no remedial action costs to recover for cleanup.

---

[1] We defer to Ecology "on technical issues based on Ecology's specialized expertise." *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 595, 90 P.3d 659 (2004); *see also Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 396, 932 P.2d 139 (1997) (substantial deference to agency views is appropriate "when an agency determination is based heavily on factual matters, especially factual matters which are complex, technical, and close to the heart of the agency's expertise"). Determining the level of lube oil that constitutes a threat or potential threat to human health or the environment is a technical issue requiring expertise. In the absence of Ecology's site-specific evaluation, the court defers to the published cleanup levels.

Furthermore, all three expert witnesses supported the trial court's conclusion that there was no threat or potential threat. Shamrock's expert, Jeff Lambert, an environmental scientist and engineer, opined that the lube oil at Douglass' property did not constitute a threat or potential threat to human health or the environment. Philip Leinart, an MTCA investigator at Ecology, agreed. Even Douglass' expert scientist from Tetra Tech, Jon Welge, after reviewing the lube oil results at 2,000 mg/kg, included a recommendation of taking no action.

C.    The prevailing party designation was made prematurely

Under the MTCA, the prevailing party in a private right of action "shall recover its reasonable attorneys' fees and costs." RCW 70.105D.080. The "prevailing party" is not defined, but the meaning is clear—the "prevailing party" is the party that either recovers remedial action costs or successfully defends against a claim for such costs. *See Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997) ("In general, a prevailing party is one who receives an affirmative judgment in his or her favor." (citing *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 164, 795 P.2d 1143 (1990))); *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 399, 325 P.3d 904 (2014) (requiring a final judgment before designating the prevailing party under RCW 4.84.250 and .270); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1797 (3d ed. 2002) ("prevail" defined: "to gain victory by virtue of strength or superiority : win mastery"). The recovery amount, or percentage recovered in comparison to the amount sought, is not dispositive to determine prevailing party status.[2] In reference to the attorney fee provision in our civil forfeiture statute (RCW 69.50.505(6)), we explained that a "'prevailing party' is any party that receives *some* judgment in its favor." *Guillen v. Contreras*, 169

---

[2] We recognize that "[t]he amount of recovery may be a relevant consideration in determining the reasonableness of a fee award," but this consideration has no bearing on the prevailing party status. *Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 666, 989 P.2d 1111 (1999).

Wn.2d 769, 775, 238 P.3d 1168 (2010) (emphasis added); *see also Ennis v. Ring*, 56

Wn.2d 465, 473, 341 P.2d 885, 353 P.2d 950 (1959) ("The prevailing party is the

one who has an affirmative judgment rendered in his favor at the conclusion of the

entire case."); BLACK'S LAW DICTIONARY 1298 (10th ed. 2014) (The "prevailing

party" is the "party in whose favor a judgment is rendered, regardless of the amount

of damages awarded."). Therefore, prevailing party status depends on whether

Douglass recovers his remedial action costs.

The Court of Appeals required only "the elements of a contribution claim"[3]

to prevail. *Douglass*, 196 Wn. App. at 860 (citing *Taliesen Corp. v. Razore Land

Co.*, 135 Wn. App. 106, 141, 144 P.3d 1185 (2006)). This, by itself, is insufficient.

The equitable assessment must occur prior to designation of the prevailing party.

Therefore, we remand the case to the trial court to conduct an equitable assessment.

If the trial court awards remedial action cost recovery for at least some of Douglass'

costs, Douglass will be the prevailing party, entitled to attorney fees.[4]

## IV. CONCLUSION

We hold that Douglass' investigative activities were remedial actions but his

recovery of investigative costs may be limited according to the court's equitable

---

[3] As indicated in Part III, *supra*, the MTCA private right of action is also referred to as a contribution claim.

[4] Douglass requested attorney fees in his cross petition for review. We decline this request. Attorney fees will be awarded to the prevailing party, and that designation has not yet been made.

determination. Based on the soil samples, Ecology's regulations, and expert testimony, the circumstances at Douglass' property did not constitute a potential threat to human health or the environment. We affirm the Court of Appeals' holding that Douglass' investigatory costs are recoverable remedial action costs but that his cleanup costs are not. We reverse the Court of Appeals' designation of a prevailing party because it was made prematurely. We remand the case to the trial court to conduct an equitable assessment, determine the amount of Douglass' remedial action cost recovery (if any), designate a prevailing party, and award attorney fees.

Fairhurst, C.J.

WE CONCUR:

_____ Johnson, J.

_____ Wiggins, J.

_____ Madsen, J.

_____ González, J.

_____ Stephens, J.

_____ Gordon McCloud, J.

_____ Owens, J.

_____ Yu, J.