# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DAVE MILNER, | No. 53372-3-II |
| Appellant, | |
| v. | |
| CARPENTER GROUP, LLC., a Washington Limited Liability Company, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—Dave Milner used the lower portion of James and Jean Carpenter's[1] driveway for more than 10 years to access his property and to back in his boat because a hedgerow and swampy conditions made access to the road via the front of his property impractical. A dispute arose when the Carpenters ordered a survey to determine their property line. After the survey, they trimmed Milner's hedge back to the survey line, killing several shrubs in the process.

Milner filed a complaint alleging a prescriptive easement over the driveway. He also alleged timber trespass, specifically claiming that the Carpenters had trespassed onto his property with the intent to injure the shrubs and seeking damages. The Carpenters filed separate motions for summary judgment on the prescriptive easement and timber trespass claims, and Milner filed cross motions for summary judgment on both claims in response. The trial court granted summary judgment for the Carpenters on both motions. The Carpenters also sought attorney fees, but the

---

[1] James and Jean Carpenter are the principals of Carpenter Group LLC, the named respondent.

trial court failed to grant their request. Milner appeals, and the Carpenters cross appeal on the trial court's failure to award attorney fees.

We affirm the trial court's grant of summary judgment to the Carpenters. We deny the Carpenters' cross appeal for attorney fees.

FACTS

I. BACKGROUND

W. Raymond and Alice Marie West purchased a lot in Silver Lake in 1991, and they sold the lot to Dave Milner in 2006. The lot is located on a cul-de-sac and also has waterfront access. The property description identifies Milner's lot as lot 21. It features a hedgerow at the front of the property along a cul-de-sac and along the boundary between lot 21 and lot 20.

Also adjacent to lot 21 is a 16-foot wide driveway to lot 19 that is shared with lots 18 and 20. Lots 18 and 20 have easements for use of the driveway on lot 19 but lot 21 does not. Below is a map depicting the placement of these lots, as well as lot 19's driveway:



Clerk's Papers (CP) at 163.

There is a space in the hedges on lot 21 large enough to fit a vehicle so that it can exit lot 21 onto the driveway on lot 19. Milner uses a portion of the lot 19 driveway to access his property because the prior owners, the Wests, told him it was his driveway and because his direct access to the cul-de-sac is blocked by hedges. Milner also claims that direct access to the cul-de-sac across the roughly 38-foot frontage would be impractical if the hedges were removed because the land is swampy there.

The Carpenters created Carpenter Group LLC for real estate investing. They purchased lot 18 in 2005 and then purchased lots 19 and 20 in 2015. The Carpenters moved from lot 18 to lot 19, where the former owner, Delores Eaton, had lived since the 1980s.

In 2017, the Carpenters and Milner had a disagreement over Milner parking his car along what he believed to be his portion of the driveway. Milner had rarely spoken to the Carpenters or Eaton before then. The Carpenters subsequently had a survey done to establish their property line and began asserting their rights based on that survey. Milner retained an attorney who began preliminary negotiations with the Carpenters and their attorney to resolve the dispute.

The Carpenters then sent Milner a letter asking him to trim tree branches that were overhanging a building on lot 20. Before the deadline in the letter, and without notifying Milner, the Carpenters trimmed the branches of Milner's hedge shrubs that extended over the survey line from Milner's property on lot 21 onto the Carpenters' property on lot 20. The Carpenters then installed a fence and cut the branches of the overhanging tree. Milner claimed 8 to 10 shrubs died as a result of the trimming. James Carpenter claimed the hedge was still living and growing as of June 2018.

## II. PROCEDURE

Milner filed a complaint in Cowlitz County Superior Court alleging two causes of action: (1) that Milner had a prescriptive easement over a portion of the Carpenters' driveway and (2) that the Carpenters intentionally destroyed Milner's shrubs in violation of RCW 64.12.030, the timber trespass statute.

The Carpenters filed a motion for partial summary judgment asking the trial court to dismiss Milner's timber trespass claim. In their motion, the Carpenters argued they had a right to engage in self-help by trimming branches that grew onto their property. The Carpenters pointed to Milner's declaration, which acknowledges the shrubs were cut right up to the survey line, as evidence that the Carpenters did not trespass onto Milner's property.

Milner responded by filing a cross motion for partial summary judgment asking the trial court to conclude that the Carpenters committed timber trespass. Milner argued that the Carpenters intentionally injured his shrubs and must have trespassed onto his property to cut the branches to the trunks. Milner submitted several exhibits, including pictures of the hedges that were cut back, to show that the dead portions of the shrubs extended onto his side of the survey line. The trial court granted the Carpenters' motion for partial summary judgment, denied Milner's motion, and dismissed the timber trespass claim.

The Carpenters next filed a motion for summary judgment asking the trial court to dismiss Milner's remaining cause of action for a prescriptive easement. The Carpenters argued that Milner's use of the Carpenters' driveway was presumed permissive, and Milner failed to carry his burden of rebutting that presumption. The Carpenters also requested attorney fees.

Milner opposed the Carpenters' motion and filed a cross motion for summary judgment asking the trial court to grant his claim for a prescriptive easement across the Carpenters' driveway. Milner argued that his and his predecessors' use of the driveway was adverse because the hedges clearly blocked any other access to the property and because there was no evidence he had a cordial relationship with the Carpenters or their predecessors. He asserted there was no genuine issue of material fact as to this issue.

The trial court granted the Carpenters' summary judgment motion, denied Milner's motion, and dismissed Milner's remaining claim. In its order granting summary judgment, the trial court concluded that Milner had failed to overcome the presumption that his use of the driveway was permissive. The trial court did not enter an order awarding attorney fees.

Milner appeals the trial court's summary judgment dismissal of his two causes of action. Milner also asks this court to rule it was error for the trial court to include findings of fact and conclusions of law in its summary judgment order. The Carpenters cross appeal the trial court's failure to award attorney fees.

ANALYSIS

I. SUMMARY JUDGMENT STANDARD

In reviewing a grant of summary judgment, appellate courts apply de novo the same standard as trial courts: summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *DeVeny v. Hadaller*, 139 Wn. App. 605, 616, 161 P.3d 1059 (2007). The moving party bears the burden of first showing that there is no genuine issue of material fact. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). "Once the moving party has made such a showing, the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and show a genuine issue of material fact." *Id.* The nonmoving party "'may not rely on speculation [or] argumentative assertions that unresolved factual issues remain.'" *KS Tacoma Holdings, LLC v. Shorelines Hr'gs Bd.*, 166 Wn. App. 117, 126, 272 P.3d 876 (2012) (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

Where reasonable minds could reach only one conclusion from the admissible facts in evidence, the issue may be determined on summary judgment. *Sutton v. Tacoma Sch. Dist. No. 10*,

180 Wn. App. 859, 865, 324 P.3d 763 (2014). We consider the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Id.* at 864.

## II. PRESCRIPTIVE EASEMENT

Milner argues that the trial court erred in granting the Carpenters' motion for summary judgment and dismissing his prescriptive easement claim because Milner and his predecessors used the driveway in a way that was adverse and should have been known by the Carpenters and their predecessors for more than 10 years. He asserts that there is no genuine issue of material fact with regard to this claim. Milner also argues that the trial court erred when it reasoned that the owners of lot 21 had to interfere with the owners of lot 19's use of the driveway to gain a prescriptive easement over the driveway. Finally, Milner argues in the alternative that there is a genuine issue of material fact as to whether "the owners of Lot 19 knew, or should have known, that the Wests and [Milner] used the lower portion of the [driveway] as a matter of right, for over ten years." Br. of Appellant at 16.

The Carpenters respond that summary judgment was appropriate because Milner did not overcome the presumption of permissive use. We affirm the trial court's grant of summary judgment to the Carpenters.

A.     Background on Prescriptive Easements

To establish a prescriptive easement, the person claiming the easement must show that the following five elements were present over a 10-year period:

> (1) . . . [T]he land [was used] in an "open" and "notorious" manner, (2) the use was "continuous" or "uninterrupted," (3) the use occurred over "a uniform route," (4) the use was "adverse" to the landowner, and (5) the use occurred "with the knowledge of such owner at a time when he was able in law to assert and enforce his rights."

*Gamboa v. Clark*, 183 Wn.2d 38, 43, 348 P.3d 1214 (2015) (quoting *Nw. Cities Gas Co. v. W. Fuel Co.*, 13 Wn.2d 75, 85, 123 P.2d 771 (1942)).

Where a person makes a claim of prescriptive easement, there is a presumption of permissive use in three scenarios, which if not overcome, defeats the adverse or hostile use requirement. *Id.* at 44. The presumption is limited to: (1) unenclosed land, (2) enclosed or developed land where "'it is reasonable to infer that the use was permitted by neighborly sufferance or acquiescence,'" or (3) where the property owner created or maintained a road and the owner's "neighbor used the road in a noninterfering manner." *Id.* (quoting *Roediger v. Cullen*, 26 Wn.2d 690, 707, 175 P.2d 669 (1946)). There is a low bar for finding a reasonable inference of neighborly sufferance or acquiescence, such as "'persons travel[ing] the private road of a neighbor in conjunction with such neighbor and other persons, nothi[n]g further appearing.'" *Roediger*, 26 Wn.2d at 711 (quoting 2 GEORGE W. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 521, at 106 (perm. ed. 1939)).

Before *Gamboa*, there was a split in the Court of Appeals regarding the presumption of permissive use. 183 Wn.2d at 45. Division One presumed the plaintiff's use of an easement on undeveloped land was permissive but presumed the use of enclosed or developed land was adverse, although permission could be inferred from the evidence. *Id.* The burden, therefore, was on the defendant to rebut the presumption of adversity where land was enclosed or developed. *Id.* Division Three, by contrast, presumed permission in all cases. *Id.* The *Gamboa* court resolved the split so that the plaintiff now has the burden in cases involving both developed and undeveloped land to prove their use was not permissive. *Id.* at 47.

To overcome the presumption of permissive use, or for an initially permissive use to ripen into adversity, the claimant must show a "distinct, positive assertion of a right adverse to the property owner," *Kunkel v. Fisher*, 106 Wn. App. 599, 604, 23 P.3d 1128 (2001), or that "the owner has indicated by some act his admission that the claimant has a right of easement," *Nw. Cities Gas Co.*, 13 Wn.2d at 87 (citing 2 THOMPSON, *supra*, at 111). A showing that the claimant used the property as a true owner is not enough to rebut the presumption. *Tiller v. Lackey*, 6 Wn. App. 2d 470, 494, 431 P.3d 524 (2018), *review denied*, 193 Wn.2d 1016 (2019). But showing that the claimant interfered with the owner's use can demonstrate adversity. *Gamboa*, 183 Wn.2d at 52.

No recent cases have shown what constitutes a "distinct, positive assertion of a right," but a few have shown what does not meet that standard. *Kunkel*, 106 Wn. App. at 604. In *Kunkel*, the plaintiffs sought a prescriptive easement through the defendants' property where the plaintiffs drove in their trucks. *Id.* at 601. The issue at trial and on appeal was whether the plaintiffs' use of the land was permissive or adverse. *Id.* at 601-03. Division One concluded the trial court had erred by failing to presume permission and held that the Kunkels' one-time maintenance of the passage did not demonstrate a distinct, positive assertion of a right adverse to the owner. *Id.* at 604-05.

Similarly, in *Imrie v. Kelley*, 160 Wn. App. 1, 10-11, 250 P.3d 1045 (2010), the court found Imrie's use of a road without explicit permission, his alleged one-time contribution to the cost of gravel for the road, and his claim that his consent was requested before the defendants added a lock to the road's gate were not enough to show a distinct, positive assertion of a right adverse to the owner. And in *Tiller*, where the Tillers used the Lackeys' private road as their only method of accessing their property, the court found the Tillers' contribution of labor and material to a shared

project on the road was "likely necessary, but not sufficient, to rebut the presumption" of permissive use. 6 Wn. App. 2d at 495.

B.       <u>Whether Milner Had a Prescriptive Easement on the Driveway</u>

There is no dispute that Milner's use was open and notorious, continuous or uninterrupted, for a period of 10 years, over a uniform route, and made with knowledge of the owner. The main issue at summary judgment and on appeal is whether Milner's use was adverse to the Carpenters. The trial court correctly applied the presumption of permissive use required under *Gamboa* and granted summary judgment in favor of the Carpenters because Milner did not overcome the presumption that his use of the Carpenters' driveway was permissive.

Here, as in *Gamboa*, there was no evidence suggesting that Milner's and the Carpenters' longtime mutual use of the driveway was anything other than neighborly acquiescence. *See* 183 Wn.2d at 52-53. And as in the example provided in *Roediger*, Milner and his predecessors have used the driveway for decades along with the true owners without incident. *See* 26 Wn.2d at 711.

To rebut the presumption of permissive use described in *Gamboa*, Milner needed to show a "distinct, positive assertion of a right adverse to the property owner," *Kunkel*, 106 Wn. App. at 604, or some concession by the Carpenters or their predecessors that Milner had an easement right to the driveway, *Nw. Cities Gas Co.*, 13 Wn.2d at 87. Milner claims the Wests told him when he bought the property from them that he had a right to use the driveway, but under *Tiller*, using the driveway as a matter of perceived right is not sufficient to establish the "'distinct, positive assertion'" required by *Kunkel*. 6 Wn. App. 2d at 494 (emphasis omitted) (quoting *Kunkel*, 106 Wn. App. at 604).

Milner gives two examples to argue he adequately rebutted the presumption of permissive use: (1) he maintained the hedges that blocked his direct access to the cul-de-sac thereby making the driveway his exclusive access to his own property, and (2) he did not have a friendly relationship with the Carpenters or their predecessors. These assertions are inadequate to overcome the presumption.

For his first example, he contends that the exclusive access raises an inference that he must have an easement, but he provides no legal authority or credible explanation as to why a barrier on his own property makes his use of the Carpenters' property adverse. The presence of the hedges alone does not show Milner is using the driveway as a matter of right. The hedges may cause Milner to need to use the Carpenters' driveway, but not necessarily in a way that interferes with the Carpenters' use. Moreover, in *Tiller*, where the plaintiffs truly had no other way to access their property, the court concluded they did not have a prescriptive easement to the road, although the court did find an easement by necessity. 6 Wn. App. 2d at 505-06. Here, Milner does not claim an easement by necessity, and he has not shown that he could not access his property by removing the hedges and addressing the drainage issue.

As to his second example, by claiming that not having a friendly relationship with the owners means his use was necessarily adverse, Milner attempts to argue that the absence of evidence equals evidence of absence. But the term "neighborly" as used in *Gamboa* does not necessarily mean "friendly." *See* 183 Wn.2d at 47. Milner does not need to be friends with the owners for permission to be presumed. A consistently contentious or hostile relationship with the owners could help rebut the presumption, but there was no evidence of hostility until this dispute began in 2017.

Milner also assigns error to the trial court basing its decision solely on whether Milner met the "'distinct, positive assertion'" test under *Gamboa* and failing to consider whether the Carpenters conceded Milner's easement. Reply Br. of Appellant at 9 (internal quotation marks omitted) (quoting CP at 341). But Milner has not shown that the Carpenters or their predecessors ever admitted Milner had the right to an easement on the driveway as required by *Northwest Cities Gas Co.*, 13 Wn.2d at 87. The absence of an objection from the owners of the driveway does not show concession.

Finally, Milner argues in the alternative that there is a genuine issue of material fact as to whether the Carpenters and their predecessors knew or should have known that Milner and his predecessors used the driveway as a matter of right over the course of 10 years. But Milner offers no evidence to support this argument and instead merely recites summary judgment standards in his brief. We need not further address an argument, like this one, that is not supported by references to relevant parts of the record. *See* RAP 10.3(a)(6).

Milner has not shown any genuine issue of material fact exists because he has not rebutted the presumption of neighborly acquiescence. He has not presented any evidence that he made a "distinct, positive assertion of a right adverse to the property owner." *Kunkel*, 106 Wn. App. at 604. Nor has he presented evidence that his use of the driveway interfered with the Carpenters' ownership. Finally, he has not presented evidence that the Carpenters have admitted he has an easement. He has not overcome the presumption as a matter of law. We hold that the trial court correctly granted the Carpenters' motion for summary judgment and dismissed Milner's prescriptive easement claim.

III. TIMBER TRESPASS

Milner argues the trial court erred in granting the Carpenters' motion for summary judgment and dismissing his timber trespass claim because genuine issues of material fact existed as to (1) whether the Carpenters intentionally crossed over Milner's boundary to injure his shrubs, and (2) whether the Carpenters injured Milner's shrubs. Milner claims the undisputed photographic evidence shows that the deadened portions of Milner's shrubs extended well into his lot and the Carpenters "deliberate[ly] and probably vindictive[ly]" injured the shrubs. Br. of Appellant at 19. The Carpenters argue they had legal authority to engage in self-help by trimming branches hanging over their property and, so long as they did not cross the boundary line, they did not have a duty to prevent harm. We affirm the trial court's grant of summary judgment to the Carpenters.

A.    Background on Timber Trespass and Encroaching Trees and Shrubs

RCW 64.12.030 provides that any person who willfully cuts down, injures, or carries off any tree or shrub on the land of another person "without lawful authority" shall be liable for treble damages claimed or assessed against the person who committed the trespass. Recent cases have held that where a person intentionally enters an area that is the subject of a boundary dispute and purposefully destroys trees in the area, "his acts are neither casual nor involuntary, nor justifiable on the basis of believed ownership, but are without lawful authority." *Ofuasia v. Smurr*, 198 Wn. App. 133, 148, 392 P.3d 1148 (2017); *see also Maier v. Giske*, 154 Wn. App. 6, 21-22, 223 P.3d 1265 (2010).

Central to this issue is whether the Carpenters acted without lawful authority. RCW 64.12.030. "[I]t has long been established in this State that a landowner has the legal authority to 'engage in self-help and trim the branches and roots of a neighbor's tree that encroach onto [their]

property.'" *Herring v. Pelayo*, 198 Wn. App. 828, 835, 397 P.3d 125 (2017) (quoting *Mustoe v. Ma*, 193 Wn. App. 161, 164, 371 P.3d 544 (2016)). *Gostina v. Ryland*, 116 Wash. 228, 233, 199 P. 298 (1921), recited the rule that an owner's remedy for intruding roots or tree branches that are not poisonous or noxious is lopping or clipping off the branches or cutting the roots at the boundary line. But this remedy does not extend to removing the entire tree. *Id.* at 232. *Herring* reaffirmed this rule. 198 Wn. App. at 839.

The Carpenters' liability also turns on whether they were required to act prudently when they pruned the shrubs. In *Mustoe*, Division One explained that a property owner does not owe a duty of care when engaging in self-help to prevent damage to the trees themselves. 193 Wn. App. at 164-65.

Thus, the Carpenters had the right to trim any portion of the shrubs that crossed over the boundary line onto their property. They were not permitted, however, to take the entire shrub, nor were they entitled to cross the property line when trimming the shrubs. They did not otherwise have a duty of care to prevent harm to the shrubs when performing their pruning.

B.      Whether a Genuine Issue of Material Fact Exists as to Timber Trespass

The Carpenters had the burden at summary judgment to show there were no genuine issues of material fact as to whether the Carpenters trespassed onto Milner's property when they trimmed the portion of Milner's hedges that encroached onto their property. The Carpenters argue that Milner's trespass claim is undermined by his own declaration that the Carpenters pruned the branches to the new survey line. Milner argues that the photographs showing dead branches on his side of the property line are evidence of trespass and create a genuine issue of material fact. Milner asks the court to apply the rule in *Ofuasia* that a person who enters a disputed area and purposefully

destroys trees has not acted involuntarily or justifiably and therefore acts without lawful authority. Milner asserts the Carpenters willfully committed timber trespass based on this rule.

But in *Ofuasia*, the boundary line was in question, and the parties had entered arbitration regarding the boundary dispute before the defendants entered the plaintiff's land and cut down the trees. 198 Wn. App. at 137-39. Here, there was no boundary dispute, and Milner and the Carpenters had begun only preliminary negotiations by letter about overhanging tree branches before the Carpenters trimmed the shrubs. Milner's photos of the dead shrubs do not raise a genuine issue of material fact as to whether the Carpenters purposefully crossed the survey line when they cut the branches because they do not establish that the Carpenters had to cross the line to prune the shrubs. There is no evidence in the record, other than Milner's baseless assertions, that the Carpenters ever trespassed onto Milner's property by crossing the boundary line. Milner has failed to meet his burden to raise a genuine issue of material fact.

C.      Whether the Carpenters Owed a Duty of Care to Prevent Damage to the Shrubs

Next, the Carpenters ask the court to apply the longstanding rule in this State that a property owner can trim the branches of a neighboring tree that encroach on the owner's land. The Carpenters point to *Gostina*, *Mustoe*, and *Herring* to argue that they had a right to self-help and did not have a duty to prevent damage to the shrubs when trimming the branches encroaching on their property. We agree.

First, the Carpenters are correct that *Gostina* affirmed an owner's right to trim branches encroaching on the owner's property. 116 Wash. at 232. Milner attempts to distinguish *Gostina* by

comparing the months-old overhanging branches in that case with the decades-old branches in this case, but that distinction is not relevant here.[2]

Second, on the issue of an owner's duty to prevent damage to a trimmed tree or shrub, the Carpenters rely on *Mustoe*, where the court declined to find a duty to prevent damage when trimming encroaching portions of a tree or shrub. 193 Wn. App. at 164-65. Milner argues *Mustoe* is distinguishable because the action there was for negligent nuisance whereas Milner's action is for an intentional or reckless tort. But this court is aware of no case that has held that the right to trim branches encroaching on one's property cannot be a defense to a claim of intentional or reckless conduct. Moreover, the plaintiff in *Mustoe* did allege reckless and intentional excavation of the tree roots, so intentional or reckless pruning does not distinguish that case. 193 Wn. App. at 164.

Third, in *Herring*, the court found the defendants were liable for killing a boundary tree because the tree was commonly owned. 198 Wn. App. at 838-39. A cotenant cannot engage in any actions that interfere with the rights of the other cotenant, including trimming a boundary tree in a way the defendant knows will kill the tree. *Id.* at 837, 839. The Carpenters correctly argue that *Herring* is distinguishable from this case because it involved a true boundary tree, unlike the shrubs here whose trunks and roots are fully on Milner's property.

Here, the Carpenters had lawful authority to trim Milner's hedges that encroached onto their property. Because the Carpenters had no duty to prevent damage to the shrubs, the fact that some shrubs died is insufficient to establish timber trespass. Milner's declaration stating that the

---

[2] Milner unsuccessfully argued adverse possession at summary judgment, but he does not raise this issue on appeal. Therefore, this court need not address it.

Carpenters pruned only to the survey line, photographs showing 8 to 10 dead shrubs, and James Carpenter's declaration that the hedge was still living, do not raise a genuine issue of material fact.

Milner counters that the Carpenters sent him a letter asking him to trim a tree that was hanging over their land, providing a deadline to do so, and the Carpenters failed to wait until the deadline had passed before cutting the tree and shrub branches. Milner seems to ask this court to infer that the Carpenters willfully injured his shrubs based on the letter and the photos showing the shrubs were cut rather badly, but because the Carpenters have established that no duty of care was owed when they cut the shrubs, an inference from the letter alone is insufficient to show a genuine issue of material fact.[3]

In sum, Milner has not shown any genuine issue of material fact exists regarding his timber trespass claim. He has not presented evidence that the Carpenters trespassed onto his property when they pruned his shrubs. Nor has he established that the Carpenters had a legal duty of care to preserve the health of the shrubs when pruning the portion of the shrubs on their own property. Milner failed to show he was entitled to judgment in his favor as a matter of law. Therefore, we hold that the trial court correctly granted the Carpenters' motion for summary judgment and dismissed Milner's timber trespass claim.[4]

---

[3] Milner claims for the first time in his reply brief that the letter established the elements of equitable estoppel, and the Carpenters were therefore estopped from denying that "the shrubs were not a boundary tree." Reply Br. of Appellant at 12. This court does not entertain arguments raised for the first time in a reply. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Moreover, Milner merely asserts without support or further explanation that the letter meets the elements of equitable estoppel.

[4] Milner argues the trial court erred by including findings of fact and conclusions of law in its order granting summary judgment for the Carpenters on the prescriptive easement claim. The Carpenters do not address this argument in their response. It is well established that findings and conclusions are inappropriate on summary judgment. *See Hemenway v. Miller*, 116 Wn.2d 725, 731, 807 P.2d 863 (1991) ("[F]indings of fact on summary judgment are not proper, are superfluous, and are not

IV. ATTORNEY FEES

The Carpenters argue that attorney fees should be available to them under RCW 7.28.083 because the finding of a prescriptive easement affects the title of the servient estate and, therefore, Milner's action asserts title to real property. The Carpenters ask the court to follow *Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 305-06, 430 P.3d 716 (2018), where Division One held that adverse possession and easement by prescription are equivalent for the purposes of RCW 7.28.083. Milner argues Division Two's decision in *McColl v. Anderson*, 6 Wn. App. 2d 88, 429 P.3d 1113 (2018), is controlling. There, we held that RCW 7.28.083 does not apply to prescriptive easement actions. *Id.* at 89. We follow *McColl* and decline to award attorney fees because this is an action for prescriptive easement, not adverse possession.

Whether the Carpenters are entitled to attorney fees requires this court to interpret the language of RCW 7.28.083(3). Statutory interpretation is a matter of law that this court reviews de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The purpose of statutory interpretation is to determine and give effect to the legislature's intent. *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014). To determine legislative intent, this court first looks to the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, and the statutory scheme as a whole. *Id.* This court gives words their ordinary meaning. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

---

considered by the appellate court."); *Johnson v. Lake Cushman Maint. Co.*, 5 Wn. App. 2d 765, 776, 425 P.3d 560 (2018) (declining to address assignments of error to specific findings of fact or conclusions of law on summary judgment because they are superfluous). Here, the trial court did not include findings of fact but did include conclusions of law in its order granting summary judgment in favor of the Carpenters. Because findings of fact and conclusions of law entered at summary judgment are treated as superfluous and are not considered on appeal, the remedy is simply that this court does not consider the unnecessary conclusions of law.

RCW 7.28.083(3) provides: "The prevailing party *in an action asserting title to real property by adverse possession* may request the court to award costs and reasonable attorney[] fees." (Emphasis added.) "The court may award all or a portion of costs and reasonable attorney[] fees to the prevailing party if . . . the court determines such an award is equitable and just." RCW 7.28.083(3).

The Court of Appeals is split in how it interprets this statute. Without analysis of the plain language of the statute, Division One in *Workman* held that attorney fees are available in prescriptive easement cases because they are often treated the same as adverse possession cases and "the elements required to establish adverse possession and prescriptive easements are the same." 6 Wn. App. 2d at 305. But Division Two in *McColl* looked to the plain language of the statute and concluded that it "allows an award of attorney fees only in an action asserting title to real property, not in an action asserting a property interest but no title. . . . Because a prescriptive easement claim does not actually assert title to property, RCW 7.28.083(3) does not apply." 6 Wn. App. 2d at 92-93.

In *McColl*, this court explained:

> An easement is an interest in real property[, but] that interest involves the *use* of property and does not grant *title* to the property. Similarly, an easement represents a burden on the property subject to the easement[, b]ut . . . that burden does not provide *title* to the property. Unlike adverse possession, a prescriptive easement does not quiet title to land.

*Id.* at 92 (citations omitted). Had the legislature intended to make attorney fees available in cases involving prescriptive easements, it would not have referred only to "adverse possession" and "title to real property." Because Milner's prescriptive easement claim does not assert title to property,

RCW 7.28.083 does not apply in this case. We follow *McColl* and decline to award attorney fees to the Carpenters.

## CONCLUSION

We affirm summary judgment for the Carpenters on Milner's prescriptive easement and timber trespass claims. We decline to remand for imposition of attorney fees below and decline to award attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, J.

I___, C.J.